# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RICHARD E. DREW, and
ROLENA C. DREW, as husband
and wife,                                               CASE NO.:

       Plaintiffs,                              DIVISION:

vs.

OCWEN LOAN SERVICING, LLC,
a foreign limited liability company,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, RICHARD E. DREW and ROLENA C. DREW, husband and wife, by and through their undersigned counsel, sues the Defendant, OCWEN LOAN SERVICING, LLC, and in support thereof respectfully alleges the following:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendant state law claims.

2.      Plaintiffs bring this action to recover statutorily prescribed damages for acts on the part of Defendant OCWEN LOAN SERVICING, LLC (hereafter "OCWEN"), in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* (hereafter "TCPA"), and the rules and regulations applicable thereto, as set forth in 47 C.F.R. § 64.1200 (hereafter the "TCPA Rules and Regulations"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereafter "FDCPA"), the Florida Consumer Collection Practices Act, sections 559.55, *et seq.*, Florida Statutes (hereafter "FCCPA"), and for common law Slander of Credit and Intentional Infliction of Emotional Distress.

3.      The alleged violations described in the Complaint occurred in Hillsborough County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTS COMMON TO ALL COUNTS

4.      Plaintiffs, RICHARD E. DREW (hereafter "RICHARD DREW") and ROLENA C. DREW (hereafter "ROLENA DREW"), are natural persons over the age of eighteen (18), who reside in Tampa, Hillsborough County, Florida.

5.      Plaintiffs are debtors and/or alleged debtors as that term is defined by section 559.55(2), Florida Statutes.

6.      Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

7.      Plaintiff ROLENA DREW is the "called party" with respect to the calls described herein. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012).

8.      At all times material hereto, OCWEN LOAN SERVICING, LLC, (hereafter "OCWEN") was and is a Florida limited liability company, duly authorized to transact business in the State of Florida, with its principal office in West Palm Beach, Florida.

9.      At all times material hereto, Defendant OCWEN did transact business in Hillsborough County, Florida, as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and/or section 559.55(6), Florida Statutes. Defendant sought to collect an alleged debt from Plaintiffs that arose from a transaction incurred for personal, family or household purposes and is therefore a "consumer debt."

10.     As described herein, Defendant OCWEN employed business practices resulting in intentional harassment and abuse of the Plaintiffs and engaged in patterns of outrageous, abusive

and harassing conduct by and through its agents and representatives in an effort to collect an alleged debt from Plaintiffs that Plaintiffs do not owe.

11.     Defendant OCWEN intentionally harassed and abused Plaintiffs on numerous occasions by sending Plaintiffs threatening collection letters asserting false and misleading information, by reporting false information to the Credit Reporting Agencies with respect to Plaintiffs, and by calling Plaintiff ROLENA DREW's cellular telephone number several times per day, and on back to back days, with such frequency as can reasonably be expected to harass, in an effort to collect an alleged debt that Plaintiffs do not owe.

12.     On or about September 28, 2005, Plaintiffs executed and delivered a promissory note to NEW CENTURY MORTGAGE CORPORATION (hereafter "NEW CENTURY") in exchange for and evidencing a loan by NEW CENTURY to Plaintiffs in the amount of $153,000.00 (hereafter the "Subject Loan"), and executed a mortgage on the same date securing payment of the Subject Loan to NEW CENTURY (hereafter the "Subject Mortgage"), which was recorded in the Pinellas County Official Records at Book 14661, Page 186 on or about October 7, 2005.

13.     The Subject Mortgage secured payment of the Subject Loan by certain real property then owned by Plaintiffs, with a street address of 517 SW 4th Avenue SW, Largo, FL 33770 (hereafter the "Subject Property").

14.     On or about October 4, 2005, NEW CENTURY assigned the Subject Mortgage to DEUTSCH BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR NEW CENTURY HOME EQUITY LOAN TRUST SERIES 2005-C ASSET BACKED PASS-THROUGH CERTIFICATES (hereafter "DEUTSCH") by executing an Assignment of Mortgage, which was subsequently recorded in the Pinellas County Official Records at Book 16508, Page 2331, on or about February 27, 2009.

15.     Thereafter, DEUTSCH retained CHASE HOME FINANCE, LLC (hereafter "CHASE") as its servicing agent with respect to the Subject Loan and Subject Mortgage.

16.     On or about October 15, 2009, Plaintiffs filed a Voluntary Petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, in a case styled: *In re: Richard Edward Drew and Rolena Clinger Drew, Case No. 8:09-bk-23413-CPM, United States Bankruptcy Court, Middle District of Florida* (hereafter the "Subject Bankruptcy Action"), wherein Plaintiffs sought to discharge certain debts, including but not limited to the Subject Loan.

17.     In Section D of the Voluntary Petition at page 17, Plaintiffs identified the Subject Loan and Mortgage on the bankruptcy schedules and identified CHASE as a secured creditor with respect to same. Furthermore, as may be seen in the Statement of Intention of the Voluntary Petition at page 41, Plaintiffs intended to surrender the Subject Property in connection with the discharge of the debt.

18.     On or about October 21, 2009, the court in the Subject Bankruptcy Action entered a Notice of Commencement, in which the court scheduled the Meeting of Creditors, and set a January 19, 2010 deadline for creditors to file a complaint objecting the discharge of the debtors or to determine dischargeability of certain debts, and said Notice of Commencement was furnished to CHASE, among others. A copy of the Notice of Commencement and Certificate of Notice is attached hereto as Exhibit "A."

19.     CHASE did not file a complaint objecting the discharge of Plaintiffs or to determine the dischargeability of the Subject Loan prior to the January 19, 2010 deadline set forth by the United States Bankruptcy Court in the above described Notice of Commencement.

20.     Consequently, on or about February 2, 2010, the United States Bankruptcy Court in the Subject Bankruptcy Action entered an Order granting Plaintiffs a discharge pursuant to 11

U.S.C. § 727, and thereby discharging the Plaintiffs with respect to the Subject Loan (hereafter the "Subject Discharge Order"). A copy of the Subject Discharge Order is attached hereto as Exhibit "B."

21.     The Subject Discharge Order states, in relevant part:

> The discharge prohibits any attempt to collect from the debtors a debt that has been discharged . . . <u>a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit</u>, to attach wages or other property, <u>or to take any other action to collect a discharged debt from the debtors.</u> A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtors' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

22.     Additionally, pursuant to 11 U.S.C. § 524, a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

23.     On or about May 14, 2010, Plaintiffs executed a Quitclaim Deed in favor of CHASE (hereafter the "Subject Quitclaim Deed"), thereby transferring all of Plaintiffs' rights, title and interest in the Subject Property to CHASE, in accordance with Plaintiffs' Statement of Intentions in the Voluntary Petition to surrender same, as described above. The Subject Quitclaim Deed was recorded in the Pinellas County Official Records at Book 16923, Page 2498 on May 24, 2010. A copy of the Subject Quitclaim Deed attached hereto as Exhibit "C."

24.     On or about August 17, 2010, the United States Bankruptcy Court in the Subject Bankruptcy Action entered a Final Decree, thereby closing the Plaintiffs' Chapter 7 case. A copy of the Final Decree is attached hereto as Exhibit "D."

25.     Subsequent to the entry of the Subject Discharge Order, Plaintiffs' respective credit reports reflected that CHASE had reported the status of the Subject Loan to the Credit Reporting Agencies as "[d]ischarged through Bankruptcy Chapter 7" and noted in the "Account History" of said reports that the debt was "included in Chapter 7 Bankruptcy on February 2, 2010." *See* redacted excerpts from Plaintiffs' credit reports, attached hereto as Exhibit "E."

26.     Unbeknownst to Plaintiffs, on or about May 11, 2012, Defendant OCWEN performed a credit inquiry with respect to Plaintiff ROLENA DREW, and obtained Plaintiff's reported credit history. *See* redacted excerpt of Plaintiff ROLENA DREW's credit report, attached hereto as Exhibit "F."

27.     As set forth above, Plaintiffs' credit reports reflect that in February of 2010, CHASE reported to the Credit Reporting Agencies that the Subject Loan had been discharged in Chapter 7 Bankruptcy, and that CHASE reported the specific date of said discharge as occurring on February 2, 2010.

28.     Accordingly, as of the date of the above described credit inquiry by Defendant OCWEN on or about May 11, 2012, Defendant OCWEN possessed actual knowledge that the Subject Loan had been discharged through Chapter 7 bankruptcy, as well as the specific date of said discharge, as reported by CHASE.

29.     Inexplicably, in or about May of 2012 -- more than two (2) years after the Subject Loan was discharged by the United States Bankruptcy Court and ownership of the Subject Property was transferred from Plaintiffs to CHASE -- Defendant OCWEN began contacting the Plaintiffs by mail and by telephone in an effort to collect the discharged debt from Plaintiffs, and began reporting the discharged debt to the Credit Reporting Agencies as a valid debt that was owed by Plaintiffs to Defendant OCWEN.

30.    In or about May of 2012, OCWEN reported to the Consumer Reporting Agencies that Plaintiffs owed OCWEN a balance of $151,423 in connection with the discharged Subject Loan. Defendant OCWEN has continued reporting to the Consumer Reporting Agencies that the discharged debt is a valid debt owed to OCWEN by Plaintiffs, has repeatedly reported that Plaintiffs are delinquent in their payments thereunder, has reported and is continuing to inaccurately report that the Subject Loan is in foreclosure status, and has reported an increasingly escalating delinquent balance on the Subject Loan associated with the imposition of various illegitimate fees by Defendant, as described below, as well as the charging of premiums for lender-placed hazard insurance policies for the Subject Property, despite the fact that Plaintiffs surrendered the Subject Property to CHASE by virtue of the Subject Quitclaim Deed more than two (2) years prior to the placement by OCWEN of such policies.

31.    On or about May 17, 2012, Defendant OCWEN sent a letter to Plaintiffs entitled "Account Statement," referencing "Account Number 7100418552" in relation to the Subject Property, wherein OCWEN sought to collect payments from Plaintiffs in connection with the Subject Loan. A copy of the May 17, 2012 "Account Statement" collection letter is attached hereto as Exhibit "G."

32.    As may be seen, the May 17, 2012 "Account Statement" collection letter alleges the existence of a "Current Principal Balance" in the amount of $151,423.05, as well as numerous unexplained and mysterious fees, late charges, and payments alleged to be owed by Plaintiffs to OCWEN, and requesting payment from Plaintiffs, as follows, in part:

04/13/12 - Property Valuation Expense ………………….. $107.00
04/26/12 - Property Inspection Fee ……………………… $10.50
05/03/12 - Title Report Fee ………………………………. $300.00
Current Amount Due by 6/01/12 ………………………… $2,831.93
Past Due Amounts DUE IMMEDIATELY……………….. $50,654.21
Late Charges …………….………………………………..... $297.00
Prev-Prior Servicer Fees ………………………………...... $1,070.00

Prev-Property Inspection Fee …………………………….. $10.50
Prev-Property Valuation Fee ……………………………... $107.00
Curr-Title Report Fee…………………………………….. $300.00
Total Amount Due …………………………………….... $55,271.54

33.     Moreover, the "Important Messages" section of the May 17, 2012 "Account

Statement" collection letter contains statements that were at all material times patently false,

including as follows, in relevant part:

> Our records indicate that your loan is in foreclosure. Accordingly, this statement
> may be for informational purposes only. Payments received are to be applied in
> accordance with your mortgage note. Payments will be first applied to bring your
> loan contractually current.

34.     At the time OCWEN mailed the May 17, 2012 "Account Statement" collection

letter to Plaintiffs, OCWEN possessed actual knowledge that the Subject Loan had been

discharged over two (2) years prior to the date of said letter through Chapter 7 bankruptcy in

February of 2010, as described above. Furthermore, by virtue of the recording of the Subject

Quitclaim Deed on May 24, 2010, Plaintiffs' transfer of all ownership interest in the Subject

Property to CHASE was a matter of public record. As the May 17, 2012 letter asserts that

OCWEN incurred a $300.00 fee associated with obtaining a title report, OCWEN possessed

actual knowledge regarding the state of record title to the Subject Property on said date.  Thus,

OCWEN was well aware of the falsity of the information set forth in said collection letter,

including the invalidity of the fees and payments alleged to be due to Defendant OCWEN by

Plaintiffs, and the falsity of the alleged status of the Subject Loan as being in foreclosure.

35.     On or about June 18, 2012, Defendant OCWEN sent another "Account

Statement" collection letter to Plaintiffs, which was nearly identical in format to the May 17,

2012 "Account Statement" collection letter, and which likewise asserted the existence of various

unexplained and mysterious fees, late charges, and payments alleged to be due to Defendant

OCWEN by Plaintiffs, including but not limited to the following:

> May-2012 Late Charges …………………………………\$53.34
> 5/18/12 Property Inspection Fee…………………………\$10.50
> Current Amount Due by 7/01/12 ………………………. \$2,831.93
> Past Due Amounts DUE IMMEDIATELY………………. \$53,486.14
> Total Amount Due ……………………………………... \$58,113.97

Additionally, the "Important Messages" section of the June 18, 2012 "Account Statement" collection letter stated, in part, "[d]ue to the status of your loan, fee(s) or charge(s) may have recently been added," and again stated that "[o]ur records indicate that your loan is in foreclosure." A copy of the June 18, 2012 "Account Statement" is attached hereto as Exhibit "H."

36.     Defendant OCWEN thereafter continued to send substantially similar "Account Statement" collection letters to Plaintiffs on a monthly basis, including but not limited to the below referenced letters, and such collection letters are continuing to be sent by Defendant OCWEN and received by Plaintiffs through the date of filing of this Complaint:

| Statement Date | Past Due/Due Immediately | Total Amount Due |
|---|---|---|
| July 17, 2012: | \$56,318.07 | \$61,065.08 |
| August 17, 2012: | \$59,150.00 | \$64,279.51 |
| September 17, 2012: | \$61,981.93 | \$67,246.94 |
| October 17, 2012: | \$64,813.66 | \$70,078.87 |
| November 19, 2012: | \$67,645.79 | \$72,758.28 |
| December 17, 2012 | \$70,477.72 | \$75,600.71 |
| January 17, 2013: | \$73,309.65 | \$78,543.14 |
| February 18, 2013: | \$76,141.58 | \$81,375.07 |
| March 18, 2013: | \$78,973.51 | \$84,251.56 |
| April 17, 2013 | \$81,805.44 | \$87,158.49 |
| May 17, 2013: | \$84,637.37 | \$90,011.42 |
| June17, 2013 | \$87,469.30 | \$92,943.35 |
| July 17, 2013: | \$90,301.2 | \$94,904.9 |
| August 19, 2013: | \$93,133.16 | \$99,085.45 |
| September 17, 2013: | \$95,965.09 | \$102,238.38 |
| October17, 2013: | \$98,797.02 | \$105,180.81 |
| November 18, 2013: | \$101,628.95 | \$108,023.24 |
| December17, 2013: | \$104,460.88 | \$110,940.67 |

Copies of the above referenced letters are attached hereto as Composite Exhibit "I."

37.     Additionally, Defendant OCWEN sent numerous letters to Plaintiffs, up to four (4) times per month, regarding a variety of mortgage payment and home owner related issues, including but not limited to the below referenced letters, and such letters are continuing to be sent by Defendant OCWEN and received by Plaintiffs through the date of filing of this Complaint:

| Correspondence Date | Correspondence Content |
| --- | --- |
| June 6, 2012: | Information of Home Affordable Modification program |
| June 9, 2012: | Information/instructions regarding purchase of hazard insurance |
| June 15, 2012: | Information of Home Affordable Modification program |
| June 24, 2012: | Notice of intent to obtain lender placed hazard insurance |
| July 29, 2012: | Insurance Binder for sixty (60) day lender placed hazard insurance |
| September 02, 2012: | Third notice of intent to place insurance |
| October 7, 2012: | Insurance Binder for annual lender placed hazard insurance |
| March 12, 2013: | Information of Home Affordable Modification program |
| March 26, 2013: | Information/instructions regarding purchase of hazard insurance |
| April 42, 2013: | Notice of placement of renewal insurance |
| June 10, 2013: | Insurance Binder for annual lender placed renewal insurance |
| June 18, 2013 | Notice of default of loan |
| October 22, 2013: | Notice of assignation of mortgage relationship manner |

Copies of the above referenced letters are attached hereto as Composite Exhibit "J."

38.     In addition to sending the above described collection letters, Defendant OCWEN initiated numerous telephone calls to Plaintiff ROLENA DREW's cellular telephone number, (727) 688-0368, in an effort to collect the discharged debt at issue from Plaintiffs.

39.     To date, Plaintiff ROLENA DREW has received approximately six-hundred (600) calls to her aforementioned cellular telephone number from Defendant OCWEN in an effort to collect the discharged debt at issue, and the calls continue through the date of filing of this Complaint.

40.     Upon answering the above described collection calls from Defendant OCWEN, Plaintiff ROLENA DREW repeatedly informed Defendant's representatives that the Subject Loan was discharged through Chapter 7 bankruptcy in February of 2010. By way of example, on

or about May 13, 2013 at 3:12 pm, Plaintiff ROLENA DREW received a collection call from Defendant on her aforementioned cellular telephone, and upon answering said call, spoke with a representative of Defendant identified as "Otto."  Plaintiff informed Otto that the Subject Loan was discharged through Chapter 7 bankruptcy in February of 2010, and Otto responded that he would note the account. However, approximately ten (10) minutes later, Plaintiff received another collection call from Defendant OCWEN on her aforementioned cellular telephone, this time from a representative of Defendant identified as "Sunita." Plaintiff informed Sunita that she had just hung up from a call with Otto, repeated to Sunita that the Subject Loan was discharged through Chapter 7 bankruptcy in February of 2010, and again demanded that OCWEN stop placing said collection calls to Plaintiff. Nevertheless, on or about May 17, 2013, Defendant OCWEN resumed placing said collection calls to Plaintiff's aforementioned cellular telephone number, this time leaving a message on Plaintiff's voicemail requesting that Plaintiff call OCWEN that that the message was left in "an attempt to collect a debt." Plaintiff has engaged in numerous similar conversations with Defendant's collection representatives upon answering said collection calls; however, despite having been repeatedly told by Plaintiff that the debt at issue was previously discharged through Chapter 7 bankruptcy, Defendant OCWEN remains steadfast and undeterred in its campaign of placing abusive and harassing collection calls to Plaintiff's aforementioned cellular telephone number.

41.    Additionally, Plaintiff ROLENA DREW made several calls to Defendant OCWEN in an effort to bring a stop to the Defendant's unlawful collection conduct in connection with the discharged debt, wherein Plaintiff likewise repeatedly informed Defendant's representatives that the Subject Loan was discharged through Chapter 7 bankruptcy in February of 2010, and requested that Defendant discontinue its abusive and harassing campaign of placing collection calls to her aforementioned cellular telephone number, sending threatening collection

letters, and reporting false information to the Credit Reporting Agencies. By way of example, on or about April 23, 2013, Plaintiff called OCWEN and spoke with a representative in Defendant's Bankruptcy Department by the name of "Pooja," who identified herself as a supervisor in said department. Plaintiff explained to Pooja that she had repeatedly told Defendant's representatives on prior occasions that the Subject Loan was discharged through Chapter 7 bankruptcy, and requested that OCWEN make no further contact with Plaintiffs unless it was to confirm that the account had been removed from OCWEN's system and that the inaccurate credit reporting on Plaintiffs' credit reports regarding the discharged debt had been corrected.  In response thereto, Pooja stated that OCWEN had purchased the debt from CHASE in 2011 as part of a "bundle," and that Defendant OCWEN would not discontinue its efforts to collect the debt from Plaintiffs, nor would it discontinue reporting the debt to the Credit Reporting Agencies.

42.     Despite Defendant OCWEN's actual knowledge that the Subject Loan was discharged through Chapter 7 bankruptcy in February of 2010, and despite Defendant's representatives being repeatedly informed of the same by Plaintiff, Defendant refuses to discontinue its campaign of abusive, harassing, and unlawful collection conduct, including the mailing of false and misleading collection letters, the inaccurate reporting of derogatory credit information, and the placement of collection calls to Plaintiff ROLENA DREW's aforementioned cellular telephone number, in violation of the TCPA, FDCPA, FCCPA and Florida common law, as set forth herein.

43.     The telephone calls at issue were placed by Defendant OCWEN using an "automated telephone dialing system" or "autodialer," which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers, as defined by the TCPA and its Rules and Regulations, 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

44. Defendant OCWEN initiated each of the calls at issue to Plaintiffs' aforementioned cellular telephone number without the "prior express consent" or "prior express invitation or permission" of Plaintiff, ROLENA DREW, as specified by the TCPA and its Rules and Regulations, 47 U.S.C. § 227(b)(1)(A) and 47 U.S.C. § 64.1200(a)(1), and defined by 47 U.S.C. § 64.1200(f)(15).

45. Additionally, none of the telephone calls at issue were placed by Defendant OCWEN to Plaintiff ROLENA DREW's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA and its Rules and Regulations, 47 U.S.C. §227 (b)(1)(A) and 47 U.S.C. § 64.1200(a)(1), and as defined by 47 U.S.C. § 64.1200(f)(4).

46. Moreover, the telephone collection calls at issue were at all material times specifically prohibited pursuant to 11 U.S.C. § 524 and the Subject Discharge Order, and Defendant OCWEN was and is unequivocally enjoined from placing said collection calls to Plaintiff pursuant thereto.

47. Defendant OCWEN willfully and/or knowingly violated the TCPA with respect to Plaintiff ROLENA DREW.

48. Defendant OCWEN has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

49. Defendant OCWEN has a corporate policy of purchasing debt that had previously been discharged in bankruptcy and attempting to collect said discharged debts, just as it did when calling Plaintiff ROLENA DREW's aforementioned cellular telephone number, mailing the above described collection letters to Plaintiffs, and reporting the subject debt to the Credit Reporting Agencies despite actual knowledge of the falsity of said reports, as described herein.

50.     Despite actual knowledge of its wrongdoing, Defendant OCWEN continued the campaign of abuse.

51.     Defendant OCWEN's corporate policy is structured to continue to call individuals like Plaintiff ROLENA DREW, despite these individuals explaining to the Defendant that the debts at issue had been previously discharged through bankruptcy, and that the properties securing said debts had been surrendered in connection with such bankruptcy proceedings.

52.     Defendant OCWEN's corporate policy provided no means for the Plaintiff ROLENA DREW to have her number removed from the call list.

53.     Defendant OCWEN has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not owe the alleged debt.

54.     Defendant OCWEN followed its corporate policies when attempting to communicate with the Plaintiffs in connection with the discharged debt at issue.

55.     Defendant OCWEN has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiffs.

56.     Defendant OCWEN has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of calls made to Plaintiff ROLENA DREW over the relevant time period.

57.     As a direct and proximate result of Defendant OCWEN's acts or omissions, as set forth herein, Plaintiffs suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

58.     Plaintiffs' statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the

enjoyment of life pursuant to section 559.77, Florida Statutes, have continued and are continuing as of the filing of this complaint.

59.     All conditions precedent to the filing of this action have occurred.

## COUNT I
### (Violation of the TCPA against OCWEN)

60.     Plaintiffs re-allege paragraphs (1) through (59) as if fully restated herein and further state as follows:

61.     None of the calls at issue were placed by Defendant OCWEN to Plaintiff ROLENA DREW's cellular telephone number with the "prior express consent" or "prior express invitation or permission" of Plaintiff, as specified by the TCPA and its Rules and Regulations, 47 U.S.C. § 227(b)(1)(A) and 47 U.S.C. § 64.1200(a)(1), and defined by 47 U.S.C. § 64.1200(f)(15).

62.     Furthermore, none of the calls at issue were placed by Defendant OCWEN to Plaintiff for "emergency purposes" as specified by the TCPA and its Rules and Regulations, 47 U.S.C. §227 (b)(1)(A) and 47 U.S.C. § 64.1200(a)(1), and as defined by 47 U.S.C. § 64.1200(f)(4).

63.     Moreover, the calls at issue were at all material times specifically prohibited pursuant to 11 U.S.C. § 524 and the Subject Discharge Order, as Defendant OCWEN is unequivocally enjoined from placing said collection calls to Plaintiff ROLENA DREW pursuant thereto.

64.     Defendant OCWEN willfully and/or knowingly violated the TCPA with respect to Plaintiff by repeatedly placing non-emergency calls to Plaintiffs' cellular telephone number using an automated telephone dialing system and/or prerecorded or artificial voice message without Plaintiffs' prior express consent, invitation or permission, as specifically prohibited by

the TCPA and its Rules and Regulations, 47 U.S.C. §227(b)(1)(A)(iii) and 47 U.S.C. § 64.1200(a)(1).

65.     The TCPA provides Plaintiff with a private right of action against Defendant OCWEN for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE, Plaintiff, ROLENA DREW, respectfully demands judgment against Defendant OCWEN for statutory damages, actual damages, an injunction from similar conduct in the future, costs, interest, and such other relief as this Court deems just and proper.

## COUNT II
### (Violation of the Florida Consumer Collection Practices Act "FCCPA" against OCWEN)

66.     Plaintiffs re-allege paragraphs (1) through (59) as if fully restated herein and further state as follows:

67.     At all times relevant to this action Defendant OCWEN is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

68.     Defendant OCWEN engaged in an act or omission prohibited under section 559.72(5), Florida Statutes, by disclosing to a person other than the Plaintiffs or their family information affecting the Plaintiffs' reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false.

69.     Defendant OCWEN engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with the Plaintiffs or any member of their family with such frequency as can reasonably be expected to harass the Plaintiffs.

70.     Defendant OCWEN engaged in an act or omission prohibited under section

559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse the Plaintiffs.

71.     Defendant OCWEN engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

72.     Defendant OCWEN' actions have directly and proximately resulted in Plaintiffs' prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest and costs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant OCWEN for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

## COUNT III
### (Violation of the "FDCPA" Against OCWEN)

73.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs (1) through (59), as if fully set forth herein.

74.     Plaintiffs have been the object of collection activity by Defendant OCWEN arising from an alleged consumer debt.

75.     Defendant OCWEN is a "debt collector" as defined by the FDCPA.

76.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692d engaging in conduct in connection with the collection of a debt, the natural consequence of which is to harass, oppress, or abuse Plaintiffs.

77.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692d(5) by causing Plaintiffs' telephone to ring or engaging Plaintiffs in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass Plaintiffs at the called number.

78.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692d(6) by calling Plaintiffs ROLENA DREW's cellular telephone number and hanging up prior to or as soon as the Plaintiffs or the Plaintiff's voice mail answered the call, in such a way as to fail to provide a meaningful disclosure of its identity.

79.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount or legal status of the alleged debt at issue.

80.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692e(8) by communicating credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

81.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect a debt from Plaintiffs or to obtain information concerning Plaintiffs.

82.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692e(11) by calling Plaintiffs ROLENA DREW's cellular telephone number and hanging up prior to or as soon as the Plaintiffs or the Plaintiff's voice mail answered the call, in such a way as to fail to disclose that the communication was from a debt collector.

83.     Defendant OCWEN engaged in an act or omission prohibited under 15 U.S.C. §1692f by using unfair or unconscionable means to collect or attempt to collect a debt from Plaintiffs.

84.     Defendant OCWEN's acts and omissions as described herein have directly and proximately resulted in Plaintiffs' prior and continuing sustaining of damages as described by 15 U.S.C. 1692 including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life, lost financing opportunities and financing terms making life more expensive for Plaintiffs; and attorney fees, interest and costs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant OCWEN for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

## COUNT IV
### (Slander of Credit against OCWEN)

85.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs (1) through (59), as if fully set forth herein.

86.     Defendant OCWEN reported the debt at issue to the Consumer Reporting Agencies as being delinquent in the amount of $92,672.31, resulting in the same being reflected on Plaintiffs' credit reports.

87.     The above described reports to the Consumer Reporting Agencies by Defendant OCWEN were false, as described herein.

88.     In making the above reports to the Consumer Reporting Agencies, Defendant OCWEN knew that they were false or exhibited a reckless and/or knowing disregard for their truth or falsity.

89.     As a direct result of the above described false credit reports by Defendant OCWEN, Plaintiffs' credit scores and credit worthiness have been impaired.

90.    As a direct and proximate result of the above described false credit reports by Defendant OCWEN, Plaintiffs have suffered losses and damages.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant OCWEN for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

## COUNT V

**(Intentional Infliction of Emotional Distress against OCWEN)**

91.    Plaintiffs re-allege paragraphs (1) through (59) above as if fully set forth herein, and further states:

92.    The outrageous conduct of Defendant OCWEN individually, and through its employees, agents, representatives and collectors, as described herein, deliberately, recklessly and/or intentionally inflicted emotional distress on the Plaintiffs.

93.    The outrageous conduct of Defendant OCWEN, as described herein, was directed at Plaintiffs by and through Defendant's employees, agents, apparent agents or other persons acting to benefit and further the interests of Defendant OCWEN, and acting in the course and scope of their employment or agency with Defendant OCWEN.

94.    As a direct and proximate result of the outrageous conduct of Defendant OCWEN, as described herein, Plaintiffs sustained mental pain and suffering, emotional distress, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiffs respectfully demand a trial by jury of all issues so triable and judgment against Defendant OCWEN for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.


Respectfully submitted,


David P. Mitchell, Esquire
Florida Bar No. 0067249
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 222-4797
DMitchell@ForThePeople.com
VMarrero@ForThePeople.com
PMitchell@ForThePeople.com
Counsel for Plaintiffs