## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RICHARD E. DREW and ROLENA C.
DREW,

                                            CASE NO.:  8:14-CV-00369-RAL-TGW

         Plaintiff,

-vs-

OCWEN LOAN SERVICING, LLC,

         Defendant.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, RICHARD E. DREW and ROLENA C. DREW, pursuant to Federal Rule of

Civil Procedure 56, seek an Order by the Court entering partial summary judgment against the

Defendant, OCWEN LOAN SERVICING, LLC, as described herein, and in support thereof, state

as follows.

### Introduction

This action arises out of conduct on the part of Defendant OCWEN LOAN SERVICING,

LLC (hereafter "OCWEN") to collect a mortgage loan debt from Plaintiffs that had previously

been discharged through Chapter 7 bankruptcy, in violation of Florida and federal law.

### I.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides

that the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). A "dispute about a material fact is 'genuine,' [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248, 2510. In other words, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id</u>.

Furthermore, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Id</u>. at 249, 2511 (citing <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50, 2511 (citing <u>Dombrowski v. Eastland</u>, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); <u>Cities Service</u>, 391 U.S. at 290, 88 S.Ct., at 1592). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." <u>Baloco v. Drummond Co., Inc.</u>, 767 F.3d 1229, 1246 (11th Cir. 2014).

## II.     <u>Binding Effect of 30(b)(6) Witness Testimony</u>

Pursuant to Fed. R. Civ. P. 30(b)(6), a corporation "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." <u>In re Bilzerian</u>, 258 B.R. 846, 848 (Bankr. M.D. Fla. 2001) (quoting <u>Marker v. Union Fidelity Life Insurance Co.</u>, 125

F.R.D. 121, 126 (M.D.N.C.1989). "When a Rule 30(b)(6) witness speaks, the witness speaks on behalf of the corporation, stating the opinion of the corporation, not his personal opinion." Vipre Sys. LLC v. NITV LLC, 606CV1631ORL28KRS, 2007 WL 3202439, at *2 (M.D. Fla. 2007). "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation . . ." QBE Ins. Corp. v. Jorda Enterprises, Inc., 277 F.R.D. 676, 688 (S.D. Fla. 2012).

"A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation." Id. (citing Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1147 (10th Cir.2007). "Although the rule is not designed to be a memory contest, the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." Id. at 689 (citing Great Am. Ins. Co. v. Vegas Constr. Co., Inc., 251 F.R.D. 534, 540 (D.Nev.2008)). "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." Id. (citing Wilson v. Lakner, 228 F.R.D. 524 (D.Md.2005)). The designated 30(b)(6) witness "must also testify about the corporation's position, beliefs and opinions." Id. (citing Great Am., 251 F.R.D. at 539; United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C.1996) (designee presents corporation's "position," its "subjective beliefs and opinions" and its "interpretation of documents and events").

Moreover, a 30(b)(6) corporate representative's "lack of knowledge answer is itself an answer which will bind the corporation at trial." Id. at 691 (citing Fraser Yachts Fla., Inc. v. Milne, No. 05–21168–CIV–JORDAN, 2007 WL 1113251, at *3 (S.D.Fla. Apr. 13, 2007); Chick–fil–A v. ExxonMobil Corp., No. 08–61422–CIV, 2009 WL 3763032, at *13 (S.D.Fla. Nov. 10, 2009); Ierardi v. Lorillard, Inc., No. 90–7049, 1991 WL 66799, *3 (E.D.Pa. Apr. 15, 1991) (if party's

30(b)(6) witness, because of lack of knowledge or failing memory, provides a "don't know" answer, then "that is itself an answer" and the corporation "will be bound by that answer").

## III.   Plaintiffs Are Entitled To Summary Judgment With Respect To Their TCPA Claim

A.   Statutory Basis for TCPA Claims Regarding Calls Placed to Cellular Telephones

The provision of the TCPA applicable to calls placed to cellular telephones provides as follows, in pertinent part:

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice --
> > . . .
> >
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; [1]

47 U.S.C. § 227(b)(1)(A)(iii).

In sum, "[t]he [TCPA] makes it unlawful to make any call using an automatic telephone dialing system (an 'autodial system' [or 'ATDS']) to a cellular telephone without the prior express consent of the 'called party.'" Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014) (citing 47 U.S.C. § 227(b)(1)(A)(iii); Pub. L. No. 102–243, 105 Stat. 2394). "'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" Lardner v. Diversified

---

[1] The Eleventh Circuit has affirmed that the reference in § 227(b)(1)(A)(iii) to the called party being "charged for the call" does not apply to calls placed to cellular telephones. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1258 (11th Cir. 2014). Accordingly, a plaintiff "is not required to prove that she was charged individually for each of the autodialed calls" in order to state a claim under the TCPA for calls placed to a cellular telephone. Id.

Consultants Inc., 1:13-CV-22751-UU, 2014 WL 1778960, *4 (S.D. Fla. 2014) (quoting Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir.2011) (quoting Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir.2008)).

"The statute further specifies that the appropriate remedy is 'an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.'" Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1250 (11th Cir. 2014) (quoting 47 U.S.C. § 227(b)(3)(B)). "Treble damages are also available for knowing or willful violations." Id. (citing 47 U.S.C. § 227(b)(3)(C)). In Gambon v. R & F Enterprises, Inc., 2014 U.S. Dist. LEXIS 179125 (M.D. Fla. Dec. 2, 2014), this Court held that

> [I]n order to establish a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), the plaintiff must demonstrate the following: 1) defendant made a telephone call that either originated in the United States or was received in the United States; 2) using any ATDS or artificial or prerecorded voice; 3) to a telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. Id. Telephone calls that otherwise violate § 227(b)(1)(A)(iii) may nevertheless be lawful if they were made "for emergency purposes or made with the prior express consent of the called party[.]" Id. at § 227(b)(1)(A). However, the purpose of the call and existence of prior express consent are not elements of a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), but rather are affirmative defenses for which the defendant bears the burden of proof. E.g., Grant v. Capital Mgmt. Servs., L.P., 449 F. App'x 598, 600 n.1 (9th Cir. 2011) (citing 23 F.C.C.R. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.")); Murphy v. DCI Biologicals Orlando, LLC, Case No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) (citing Buslepp v. B & B Entm't, LLC, 2012 U.S. Dist. LEXIS 148527, 2012 WL 4761509, at *4 (S.D. Fla. Oct. 5, 2012)).

B.    The Calls At Issue Were Placed By Defendant Using An ATDS

Plaintiffs' Amended Complaint (Dkt. 19) alleges that "[t]he telephone calls at issue were placed by Defendant OCWEN using an 'automated telephone dialing system' or 'autodialer' which has the capacity to store or produce telephone numbers to be called, using a random or

sequential number generator; and to dial such numbers, as defined by the TCPA [], 47 U.S.C. § 227(a)(1) [].” (Dkt. 19, ¶ 44).

At the April 24, 2015 deposition, Defendant's designated 30(b)(6) witness, Paul Myers, testified that he is familiar with the dialing system used by Defendant to place collection calls to borrowers. Mr. Myers testified that the dialing system utilized by Defendant Ocwen to initiate the calls at issue was at all material times a version of the "Aspect" dialing system. PSUF ¶ 41. Mr. Myers testified that the Aspect dialing system dials numbers automatically from a list created by Ocwen and loaded into Aspect. PSUF ¶ 42. No human intervention is required to place the call. (Id.). Once a call placed by the Aspect dialing system is answered, the Aspect system automatically routes the call to an available collector, and the information for the called party's loan is automatically populated on the collector's computer screen. (Id.). The collector receives a tone in their headset once a call is coming, and the collector does not need to take any action to receive the call. (Id.). A collector can stop receiving automated calls by clicking "not ready" on their computer screen. (Id.). The Aspect system is a computer, which is programmed to operate based on algorithms. (Id.). Mr. Myers specifically described the Aspect dialing system as an "automated dialing system." PSUF ¶ 43.

       i.      FCC Rulings Interpreting the TCPA Have the Force of Law in This Circuit

On September 29, 2014, the Eleventh Circuit in Mais v. Gulf Coast Collection Bureau, Inc., held that "[t]he 2008 FCC Ruling [] has the force of law and is an order reviewable under the Hobbs Act in the courts of appeals." 768 F.3d at 1121 (citing In the Matter of Rules & Regulations Implementing the TCPA of 1991, 23 F.C.C.R. 559 (Jan. 4, 2008) (hereafter "2008 FCC Ruling"). The court observed that "[t]he Hobbs Act [] expressly confers on the federal courts of appeals 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the

validity of' such FCC orders." Id. at 1119 (quoting 28 U.S.C. § 2342; and citing FCC v. ITT World Commc'ns, Inc., 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) ("Exclusive jurisdiction for review of final FCC orders ... lies in the Court of Appeals."). The court explained that "[t]his procedural path created by the command of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows "uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA." ' " Id. (quoting CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir.2010) (quoting United States v. Dunifer, 219 F.3d 1004, 1008 (9th Cir.2000)). The Eleventh Circuit further explained that "district courts lack jurisdiction to consider claims to the extent they depend on establishing that all or part of an FCC order subject to the Hobbs Act is 'wrong as a matter of law' or is 'otherwise invalid.'" Id. at 1120. (citing Self v. Bellsouth Mobility, Inc., 700 F.3d 453, 462 (11th Cir. 2012)). Additionally, "whether the challenge to an FCC order 'arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are "equally applicable whether [a party] wants to challenge the rule directly ... or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit." ' " Id. (quoting CE Design, 606 F.3d at 448 (alterations in original) (quoting City of Peoria v. Gen. Elec. Cablevision Corp., 690 F.2d 116, 120 (7th Cir.1982)).

In reversing the district court's order granting summary judgment as to the plaintiff's TCPA claim, the court held that "[r]egardless of which party invoked the 2008 FCC Ruling, . . . the district court was without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling." Id. at 1120-21.

      ii.      The FCC Has Ruled That The Defining Characteristic of an ATDS is "The Capacity To Dial Numbers Without Human Intervention"

In 2003, the FCC expanded the definition of an ATDS to include "predictive dialers." See In re Rules & Regulations Implementing the TCPA, 18 FCC Rcd. 14014 (FCC 2003) ("2003 FCC Order"). In doing so, "[t]he FCC determined that predictive dialers fall within the definition of an ATDS, even though they may not 'store or produce telephone numbers to be called, using a random or sequential number generator,' as set forth in the text of the TCPA." Legg v. Voice Media Group, Inc., 13-62044-CIV, 2014 WL 2004383, at *3 (S.D. Fla. 20014) (citing 2003 FCC Order, at 14091). The court explained that in "[r]eviewing the statutory text and legislative history of the TCPA, the FCC noted that Congress enacted the TCPA to deal with the increasing use of automated systems to place large volumes of calls." Id. (quoting 2003 FCC Order, at 14091–92). The court observed that "[t]he FCC thus concluded that the defining characteristic of an ATDS is 'the capacity to dial numbers without human intervention.'" Id. (quoting 2003 FCC Order, at 14092). "The FCC further reasoned that the TCPA's definition of an ATDS as a system with the capacity to generate numbers to be called 'randomly or sequentially' reflected the state of automatic dialing technology at the time of the TCPA's passage, but that this requirement had become an anachronism given that the 'teleservices industry has progressed to the point where using lists of numbers is far more cost effective' than generating numbers." Id. (quoting 2003 FCC Order, at 14092). "[T]he FCC found that [a predictive dialer] is the sort of automated equipment Congress intended to address through the TCPA because it has the 'capacity to dial numbers without human intervention.'" Id. (citing 2003 FCC Order, at 14092–93). The court further held that the reasoning of the FCC order is not limited to "predictive dialers" because "the FCC clearly expressed that an ATDS is defined by 'the capacity to dial numbers without human intervention,' for example by calling numbers stored in a database." Id. (quoting 2003 FCC Order, at 14091–93).

"On July 4, 2008, the FCC clarified the existing rules under the TCPA." Jamison v. First Credit Services, Inc., 290 F.R.D. 92, 96 (N.D. Ill. 2013) reconsideration denied, 12 C 4415, 2013 WL 3872171 (N.D. Ill. 2013) (citing 2008 FCC Order). The 2008 FCC Order "affirmed that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialer." Id. at 97. The FCC has now consistently ruled at least four (4) times that a predictive dialer constitutes an "automatic telephone dialing system" under the TCPA. See 2003 FCC Order, 18 FCC Rcd at 14091, ¶ 131; In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 19 FCC Rcd. 19215, 19215, n. 1 (2004) ("2004 FCC Order"); 2008 FCC Order, 23 FCC Rcd. 559, 566, ¶ 12; In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15399 n.5 (2012) ("2012 FCC Order") ("definition of 'autodialer' covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists") (emphasis in original).

"Focusing on the FCC's reasoning that the defining characteristic of an ATDS is the 'capacity to dial numbers without human intervention,' [numerous] courts have found equipment to qualify as an ATDS if it can dial numbers automatically, for example by calling or sending text messages to numbers in a preprogrammed list, irrespective of the presence of a random or sequential number generator." Legg, supra, 2014 WL 2004383 at *3 (citing Lardner v. Diversified Consultants, Inc., 17 F.Supp.3d 1215, 1222, 2014 WL 1778960 at *5, 2014 U.S. Dist. LEXIS 64205 at *15–16 (S.D. Fla. Apr. 30, 2014) (collecting cases, acknowledging the FCC's interpretation that "automated dialing systems that automatically dial cell phone numbers from a preprogrammed list . . . are 'automatic telephone dialing systems' under the TCPA," and holding

9

that "it does not matter that the [Defendant's dialing system] is not used to store or produce telephone numbers using a random or sequential number generator . . . It qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list"); Fields v. Mobile Messengers Am., Inc., No. 12–05160, 2013 WL 6774076 at *3, 2013 U.S. Dist. LEXIS 180227 at *9–12 (N.D. Cal. Dec. 23, 2013) (citing 2003 FCC Order and finding that evidence of text messages sent without human intervention was sufficient to preclude summary judgment on whether ATDS was used); Hickey v. Voxernet LLC, 887 F.Supp.2d 1125, 1129–30 (W.D.Wash.2012) (citing 2003 FCC Order to find that plaintiff sufficiently pled use of ATDS where he alleged facts suggesting automated transmission of text messages); Rivas v. Receivables Performance Mgmt., LLC, No. 08–61312, 2009 U.S. Dist. LEXIS 129378 at *12–13 (S.D. Fla. Sept. 1, 2009) (plaintiff created issue of fact on use of ATDS precluding summary judgment where evidence suggested "computer device that dialed Plaintiff's number without human intervention"). See also Vance v. Bureau of Collection Recovery LLC, 2011 WL 881550, at *2 (N.D.Ill.2011) (stating that "the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA").

Most recently, this Court rejected a defendant's argument that its dialer did not fall within the definition of an "automatic telephone dialing system" under the TCPA because it lacked the present capacity to generate random or sequential numbers. Coniglio v. Bank of Am., N.A., 8:14-CV-01628-EAK, 2014 WL 6882294, at *2 (M.D. Fla. December 4, 2014). In rejecting the defendant's argument, the court noted that the defendant's dialer was admittedly "configured to make calls from a list of numbers and according to certain rules," and held that a predictive dialer which lacks capacity to generate random or sequential numbers nevertheless "constitutes an

automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." Id. (quoting 2008 FCC Order, 23 FCC Rcd. at 566, ¶ 12).

Thus, the FCC has repeatedly and consistently emphasized that "the main requirement for an ATDS is not the capacity to generate random or sequential numbers, but rather to be able to 'dial numbers without human intervention.'" Sterk v. Path, Inc., 13 C 2330, __ F.Supp.2d ___, 2014 WL 2443785, *4 (N.D. Ill. May 30, 2014) (quoting 2003 FCC Order, 18 FCC Rcd. at 14092). The defendant in Sterk argued that the uploading of call lists to the defendant's dialer database constitutes "human intervention." Id. The court rejected this argument, holding "[i]t is the ultimate calling from the list by the automated equipment that is the violation of the TCPA . . . not the collection of numbers for storage" Id.

Pursuant to the above cited authority, the characteristics of Defendant's dialing system plainly falls within the definition of "automated telephone dialing system" as defined by the FCC.

C.    Plaintiff Was The "Called Party" As Defined By The TCPA

The Eleventh Circuit has explained that the "'called party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service." Breslow, supra, 755 F.3d at 1266 (citing Osorio, supra, 746 F.3d at 1251). In so holding, the Eleventh Circuit in Osorio specifically rejected the argument that the "intended recipient" of a creditor/debt collector's debt collection calls is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A). The Second Amended Complaint alleges that Plaintiff Rolena Drew "is the 'called party' with respect to the calls described herein." (Dkt. 19, ¶ 7).

As referenced in the Plaintiff's Statement of Undisputed Facts, at all times material hereto, Plaintiff Rolena Drew is and was the owner, regular user, exclusive carrier, possessor and subscriber of the cellular telephone with the assigned telephone number 727-688-0821. PSUF ¶

36. Accordingly, there is no genuine dispute of material fact as to this element of the TCPA count, Plaintiffs are entitled to summary judgment with respect to this element of their TCPA claim against Defendant.

D.   <u>Defendant Did Not Have Plaintiff's Prior Express Consent To Place The Calls At Issue To Plaintiff's Cellular Telephone</u>

In the Second Amended Complaint (Dkt. 19), Plaintiffs allege that "[n]one of the calls at issue were placed by Defendant OCWEN to Plaintiff ROLENA DREW's cellular telephone number with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A)." (Dkt. 19, ¶ 62). In its Answer and Affirmative Defenses, Defendant asserts the following as its Third Affirmative Defense:

> Plaintiffs provided Defendant's predecessor-in-interest with "prior express consent" under 47 U.S.C. § 227 and 47 U.S.C. § 64.1200, therefore Plaintiffs should not be granted the relief they have requested under the TCPA.

The FCC has expressly stated that the creditor bears the burden of proving "prior express consent" under the TCPA. <u>In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 F.C.C.R. 559, ¶ 10 (Jan. 4, 2008) (hereafter "2008 FCC Ruling"). [2] <u>See also Buslepp v. B & B Entm't, LLC</u>, 12-60089-CIV, 2012 WL 4761509, *5 (S.D. Fla. 2012) ("The burden of establishing this affirmative defense [of prior express consent] is squarely upon the Defendant"). Thus, the onus of proving the Defendant's Third Affirmative Defense that Defendant had Plaintiffs' prior express consent to place the autodialed calls at issue as is on the Defendant.

---

[2] The Eleventh Circuit recently held that "[t]he 2008 FCC Ruling [] has the force of law and is an order reviewable under the Hobbs Act in the courts of appeals, and that "[a] district court [is] without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling." <u>Mais v. Gulf Coast Collection Bureau, Inc.</u>, 768 F.3d 1110, 1121 (11th Cir. 2014).

Because it is undisputed that the Subject Loan was discharged in the Subject Bankruptcy Action, Defendant's "prior express consent" defense is simply untenable. Pursuant to 11 U.S.C. § 524(a)(2), a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." "A bankruptcy discharge and the concomitant injunction against subsequent actions [provided by section 524(a)] are designed to give the debtor a financial 'fresh start.'" Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.), 883 F.2d 970, 972 (11th Cir.1989). "The discharge injunction of 11 U.S.C. § 524 is one of the most fundamental protections, or 'benefits,' of bankruptcy. Without it, there would be no 'fresh start.'" In re Poindexter, 376 B.R. 732, 736 (Bankr. W.D. Mo. 2007). "The purpose of the discharge injunction is 'intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'" Walton v. Clark & Washington, P.C., 454 B.R. 537, 545 (Bankr. M.D. Fla. 2011) (quoting H.R.Rep. No. 95–595, at 365–66 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6322; S.Rep. No. 95–989, at 80 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5866) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start"). Accordingly, Plaintiffs are entitled to summary judgment with respect to Defendant's Third Affirmative Defense.

E.     Available Damages Under The TCPA

As set forth above, "'[t]he TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" Lardner, supra, 2014 WL 1778960, *4 (S.D. Fla. 2014) (quoting Alea London Ltd., supra, 638 F.3d at 776 (quoting Penzer, supra, 545 F.3d at 1311). "The statute further specifies that the appropriate remedy is 'an action to recover

for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.'" Osorio, supra, 746 F.3d at 1250 (quoting 47 U.S.C. § 227(b)(3)(B)). "Treble damages are also available for knowing or willful violations." Id. (citing 47 U.S.C. § 227(b)(3)(C)).

F.       Defendant's Violations of the TCPA Were Willful or Knowing

The Fifth Amended Complaint (Dkt. 85) alleges that Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff by "repeatedly placing non-emergency calls to [Plaintiff's] aforementioned cellular telephone number using an automated telephone dialing system and/or prerecorded or artificial voice message without Plaintiff's prior express consent, invitation or permission, as specifically prohibited by the TCPA [], 47 U.S.C. § 227(b)(1)(A)(iii) []." (Dkt. 85, ¶ 33).

"The TCPA does not require any intent for liability except when awarding treble damages." Alea London Ltd. v. Am. Home Services, Inc., 638 F.3d 768, 776 (11th Cir. 2011) cert. denied, 132 S. Ct. 553, 181 L. Ed. 2d 397 (U.S. 2011) (citing Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir. 2008)). "Importantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely "knowing" conduct." Id. "The FCC has interpreted "willful or knowing" under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." State v. Am. Blastfax, Inc., 164 F.Supp.2d 892, 899 (W.D.Tex.2001) (citing In re Intercambio, Inc., 3 FCC Rcd. 7247, ¶ 29 (1988)). An individual acts "knowingly" if the individual "either had reason to know or should have known that [he or she] engaged in acts which could constitute a violation of the statute." Intercambio, at ¶ 41. In Am. Blastfax, the court held that the defendant willfully or knowingly violated the TCPA, and awarded

14

treble damages, finding that "after they knew [] that [their] conduct reasonably could violate the TCPA, the defendants made a knowing, wilful, deliberate and calculated decision to continue [sending communications] without the recipients' consent []," and that at some point, "defendants knew their conduct in fact *did* violate the TCPA, yet they still chose not to alter their business practices." 164 F.Supp.2d at 899 (emphasis in original).

Moreover, the United States Supreme Court has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); accord, Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1044-46 (D. Minn. 2010) aff'd, 413 F. App'x 925 (8th Cir. 2011) (applying Burr "willfulness" analysis in TCPA action). The Court observed "the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way." Id. at 57–58 (citing Beck v. Prupis, 529 U.S. 494, 500–01, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000)) The Court held that "while 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Burr, supra, 551 U.S. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Pursuant to the applicable authority interpreting the TCPA, each call placed by Defendant after the Plaintiff instructed Defendant to stop calling the Plaintiff's cellular telephone number constitutes a "willful" and/or "knowing" violation warranting the trebling of the award to $1,500 per call, as provided by 47 U.S.C. § 227(b)(3)(C). See Coniglio v. Bank of America, N.A., No. 8:14–CV–01628–EAK–MAP, 2014 WL 5366248, *4 (M.D. Fla., Oct. 21, 2014) (citing

15

Echevvaria v. Diversified Consultants, Inc., 13 CIV. 4980 LAK AJP, 2014 WL 929275, *11

(S.D.N.Y. 2014)); Clements v. DSM Supply LLC, 8:13-CV-1096-T-33EAJ, 2014 WL 560561

(M.D. Fla. 2014) (awarding damages of $1,500 per violation of the TCPA after the plaintiff's

request to the defendant to cease communications) (citing Tacoronte v. Tate & Kirlin Associates,

6:13-CV-331-ORL-37, 2013 WL 5970720, at *8 (M.D. Fla. Nov. 8, 2013) (same); Harris v. World

Fin. Network Nat. Bank, 867 F. Supp. 2d 888, 895-896 (E.D. Mich. 2012) (same).

G.      Defendant's Remaining Affirmative Defenses to Plaintiff's TCPA Claim Are Legally
        Insufficient

        In its Answer and Affirmative Defenses (Dkt. 21), Defendant asserts various

purported Affirmative Defenses to Plaintiffs' TCPA claim. As its First Affirmative

Defense, Defendant states as follows:

> Plaintiffs have unclean hands because Plaintiffs have engaged in a course of
> conduct designed to manufacture a lawsuit, and therefore Plaintiffs should not
> be granted the requested relief.

As its Second Affirmative Defense, Defendant states as follows:

> Plaintiffs have and/or had an established business relationship with Defendant
> and/or Defendant's predecessor-in-interest under 47 U.S.C. § 227 and 47 U.S.C.
> § 64.1200; therefore, Plaintiffs should not be granted the relief they have
> requested under the TCPA in whole or in part.

As its Third Affirmative Defense, Defendant states as follows:

> Plaintiffs provided Defendant's predecessor-in-interest with "prior express
> consent" under 47 U.S.C. § 227 and 47 U.S.C. § 64.1200, therefore Plaintiffs should
> not be granted the relief they have requested under the TCPA.

        None of Defendant's above Affirmative Defenses to the Plaintiff's TCPA claim state a

legally sufficient defense based on the facts at issue in this action. With respect to Defendant's

First Affirmative Defense, it is well settled that the defense of "unclean hands" is not a legally

valid defense in actions for money damages. "The equitable doctrine of 'unclean hands' applies

16

when a party seeking *equitable* relief has committed an unconscionable act immediately related to the *equity* the party seeks in respect to the litigation." Regions Bank v. Old Jupiter, LLC, 10-80188-CIV, 2010 WL 5148467, at *5-6 (S.D. Fla. 2010) aff'd, 449 Fed. Appx. 818 (11th Cir. 2011) (emphasis added) (citing Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir.2001). In fact, under Florida law, the unclean hands defense is legally insufficient and subject to being stricken with respect to claims for *monetary* damages. Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 13 Fla. L. Weekly Fed. D 13, 1999 WL 781812, *2 (M.D. Fla. 1999) (emphasis added) ("Should Florida substantive law apply in this case, Third–Party Defendant's unclean hands defense would be struck concerning monetary damages []"). See also Nature's Products, Inc. v. Natrol, Inc., 990 F. Supp. 2d 1307, 1317 (S.D. Fla. 2013) ("the unclean hands doctrine traditionally only applies to equitable remedies and does not bar a plaintiff from recovering damages") (citing Mitchell Bros. Film Grp. v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir.1979)); Old Jupiter, supra, 2010 WL 5148467 at *6 ("Where, as here, a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable") (citing McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 756 n. 10 (3d Cir.1990)); Coquina Investments v. Rothstein, RICO Bus. Disp. Guide 12136 (S.D. Fla. 2011) aff'd sub nom. Coquina Investments v. TD Bank, N.A., 760 F.3d 1300 (11th Cir. 2014) ("The unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses") (quoting Old Jupiter, supra, 2010 WL 5148467 at *6)); In re Antonini, Bankr. L. Rep. P 82154, 2012 WL 112978, *13 (Bankr. S.D. Fla. 2012) subsequently aff'd, 555 Fed. Appx. 909 (11th Cir. 2014) (holding unclean hands defense "fails as a matter of law in respect to [c]ounts . . . seek[ing] to liquidate money damages"); Regions Bank v. Commonwealth Land Title Ins. Co., 977 F. Supp. 2d 1237, 1268 (S.D. Fla. 2013) (same); Bruce v. Ocwen Loan Servicing, LLC, No. 8:12-CV-1561-T-24 MA, 2012 WL 4867224,

at *2 (M.D. Fla. Oct. 15, 2012) (striking unclean hands defense in TCPA action, holding such defense is irrelevant and immaterial to whether the defendant violated the TCPA). [3]

As set forth herein, Plaintiff seeks statutory money damages available under the TCPA for Defendant's violations of the TCPA. Pursuant to the above cited authority, the defense of unclean hands does not bar the Plaintiff from recovering monetary damages from the Defendant in this suit for its violations of the TCPA. To the extent Plaintiffs' Second Amended Complaint (Dkt. 19) seeks equitable relief for Defendant's violations of the TCPA, such claim for relief is hereby withdrawn.

With respect to Defendant's Second Affirmative Defense, "the established business relationship exemption does not apply to [] claims under 47 U.S.C. § 227(b)(1)(A)(iii) for calls to [] cellular telephone[s], and instead applies only to calls to land lines." Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1378 (S.D. Fla. 2014) (citing Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 273 (3d Cir. 2013)). "Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." Id. See also Himes v. Client Servs. Inc., 990 F. Supp. 2d 59, 68 (D.N.H. 2014). The Eleventh Circuit has specifically held that the regulation at issue, 47 C.F.R. § 64.1200,

---

[3] To the extent Defendant's unclean hands defense is intended to encompass failure to mitigate, the law is likewise well settled that "failure to mitigate is not a viable defense against TCPA liability" and a defendant in a TCPA action "is precluded from asserting this defense." Lardner v. Diversified Consultants Inc., 17 F. Supp. 3d 1215, 1220 (S.D. Fla. 2014) (citing Fillichio v. M.R.S. Assoc., Inc., No. 09–61629–CIV, 2010 WL 4261442, at *5 (S.D.Fla. Oct. 19, 2010)). "[T]he TCPA does not impose a duty to mitigate." Fillichio, supra, 2010 WL 4261442 at *5 (citing Holtzman v. Turza, 2010 WL 3076258, at *5 (N.D.Ill.2010) ("Mitigation of damages is not a defense under the TCPA, and each instance of a violation is independently actionable."); State ex rel. Charvat v. Frye, 114 Ohio St.3d 76, 868 N.E.2d 270, 275 (Ohio 2007) ("There is no duty to mitigate in TCPA cases."); Manuf. Auto Leasing, Inc. v. Autoflex Leasing, Inc., 139 S.W.3d 342, 347 (Tex.Ct.App.2004) ("no duty to contact [defendant] and ask them to stop violating the TCPA"); Onsite Computer Consulting Svs., Inc. v. Dartek Computer Supply Corp., 2006 WL 2771640, at *4 (Mo.Ct.App.2006) ("Plaintiff was not required to mitigate its damages by calling Defendant.")

does not apply to claims under 47 U.S.C. § 227(b)(1)(A)(iii), for calls placed to cellular telephones. <u>Osorio v. State Farm Bank, F.S.B.</u>, 746 F.3d 1242, 1250 (11th Cir. 2014). The Osorio court explained that "47 U.S.C. § 227(b)(2)(B) permits the FCC 'by rule or order, [to] exempt [certain categories of calls] from the requirements of paragraph (1)(B) of this subsection [*i.e.,* 47 U.S.C. § 227(b)(1)(B) ].'" <u>Id</u>. "In 1992, the FCC promulgated just such a regulation, one that exempts calls 'made to any person with whom the caller has an established business relationship at the time the call is made.'" <u>Id</u>. (quoting 47 C.F.R. §64.1200(a)(2)(iv)). However, the court explained that "47 U.S.C. § 227(b)(2)(B) does not authorize rulemaking with regard to 47 U.S.C. § 227(b)(1)(A)(iii), the provision in question here." <u>Id</u>. In distinguishing its prior decision in <u>Meadows v. Franklin Collection Service, Inc.</u>, 414 Fed.Appx. 230 (11th Cir.2011), the Eleventh Circuit held that "because the regulation does not bear on § 227(b)(1)(A)(iii), neither does <u>Meadows</u>." <u>Id</u>. at 1251. Accordingly, because Plaintiff's TCPA claim in this action is brought pursuant to § 227(b)(1)(A)(iii), Defendant's "established business relationship" affirmative defense fails as a matter of law.

i.     *Calculation of TCPA Damages*

As set forth above, Defendant admits to placing 215 calls to Plaintiff Rolena Drew's cellular telephone number, 727-688-0821, between April 20, 2013 and February 13, 2014. PSUF ¶ 44. However, Defendant's call log is incomplete, and Defendant placed additional calls to Plaintiff Rolena Drew's cellular telephone number, 727-688-0821, that are not reflected on its call log, including a call on July 10, 2013. PSUF ¶ 45. Defendant concedes the possibility that its call log is incomplete, and that Plaintiff may have received calls from Defendant that are not reflected on its call log. PSUF ¶ 46. Defendant placed an average of approximately five (5) calls per week to Plaintiff Rolena Drew's cellular telephone number, 727-688-0821, from July 27, 2012 to April

20, 2013, following the same pattern it used from April 20, 2013 to February 13, 2014. PSUF ¶ 47. The time period from July 27, 2012 to April 20, 2013 constitutes exactly thirty-seven (37) weeks. A calculation of 5 calls per week during this 37 week period equals 190 calls. The 215 calls Defendant admits to placing, plus the aforementioned 190 calls, plus the additional call plaintiff received on July 10, 2013, equals 406 total calls.

It is therefore undisputed that Defendant placed 406 calls to Plaintiff Rolena Drew's cellular telephone number using an "autodialer" within the scope of the TCPA. A Plaintiff's unrefuted testimony as to call volume is sufficient evidence for purposes of calculating TCPA damages. See Coniglio v. Bank of Am., N.A., No. 8:14-CV-01628-EAK, 2014 WL 5366248, at *5 n.3 (M.D. Fla. Oct. 21, 2014) (wherein the Honorable Elizabeth A. Kovachevich held that Plaintiffs' affidavit testimony that in the four (4) years prior to the filing of the action, they received "an average of approximately ten (10) calls per month from [the defendant] on [their respective] cellular telephone number[s]" properly supported the court's calculation of TCPA damages). Thus, although records are not necessary, Plaintiff's screenshots support that Plaintiff received calls not reflected on Defendant's call log. By conceding that it may have placed more than the 215 calls reflected in its call log, [4] Defendant has failed to controvert Plaintiff's proof with respect to the additional 190 calls Plaintiff Rolena Drew testified she received from Defendant from June 27, 2012 to April 20, 2013, and the additional call reflected on her screen shot dated July 10, 2013,

---

[4] Pursuant to the above cited authority governing the evidentiary nature of Rule 30(b)(6) deposition testimony, Defendant is bound by Mr. Myers's lack of knowledge as to why the Defendant's call log did not reflect the July 10, 2013 call received from Defendant on Plaintiff's cellular telephone number at issue, and his acknowledgement that Plaintiff may have received calls that are not reflected in its call log. Accordingly, because there is no genuine dispute of material fact as to this element of the TCPA count, Plaintiff is entitled to summary judgment with respect to this element of his TCPA claim against Defendant.

and therefore Defendant fails to satisfy its obligation under Rule 56 to create a question of fact. See Thomas v. Miami Dade Pub. Health Trust, 369 Fed. Appx. 19, 23 (11th Cir. 2010) (since party opposing motion for summary judgment "did not controvert [moving party's] evidence, the district court was correct to determine causality did not exist as a matter of law, and the [moving party] was entitled to summary judgment on these claims."). As set forth above, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, supra, 477 U.S. at 248, 2510. Accordingly, because there is no genuine dispute of material fact as to this element of the TCPA count, Plaintiff is entitled to summary judgment with respect to this element of his TCPA claim against Defendant.

## IV.    Plaintiffs Are Entitled To Summary Judgment With Respect To Their FDCPA Claim

"In 1977 Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836-37 (11th Cir. 2010) (quoting 15 U.S.C. § 1692(e)). "The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1191-92 (11th Cir. 2010) (citing Fla. Stat. § 559.552 ("In the event of any inconsistency ... the provision which is more protective of the consumer or debtor shall prevail.")). "Further, the fact that the FCCPA deemed its remedies

21

cumulative reveals that the Florida legislature contemplated dual enforcement—that an 'out-of-state debt collector' could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA." Id.

In order to prevail on their FDCPA claims, Plaintiffs must prove that: (1) they were the object of collection activity arising from a consumer debt; (2) Defendant is a debt collector as defined by the FDCPA; and (3) Defendant engaged in an act or omission prohibited by the FDCPA. See McCorristone v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2003). Similarly, in order to state a claim under the FCCPA, Plaintiffs must prove: (1) they were the object of collection activity arising from a consumer debt; and (2) Defendant engaged in an act or omission prohibited by the FCCPA. See Oppenheim v. I.C. System, Inc., 627 F.3d 833, 836-37 (11th Cir. 2010) ("To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'"). However, unlike the FDCPA the FCCPA applies to *all persons* collecting consumer debts, not just debt collectors. See Schauer v. General Motors Acceptance Corp., 819 So. 2d 809, 811-12 (Fla. 4th Dist. Ct. App. 2002); Bacelli v. MFP, Inc., 729 F. Supp. 1328, 1333 n. 7 (M.D. Fla. 2010) (noting "The FCCPA differs from the FDCPA, in part, in that it prohibits acts "of persons" and, accordingly, is not limited to debt collectors.").

Pursuant to 15 U.S.C. § 1692k(a), "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of such failure [and] such additional damages as the court may allow" in an amount not exceeding one-thousand dollars ($1,000), in addition to "the costs of the action, together with a reasonable attorney's fee as determined by the court." The FCCPA similarly provides that "any person who fails to comply

with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow," in an amount not exceeding one-thousand dollars ($1,000), "together with court costs and reasonable attorneys' fees incurred by the plaintiff." Fla. Stat. § 559.77(2). The FCCPA also provides for the recovery of punitive damages. Id.

A.    The Subject Loan was a "Debt" Under the FDCPA and FCCPA

Both the FDCPA and FCCPA define "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010) (finding the debt at issue to be a "consumer debt" under both the FDCPA and FCCPA because both Acts contain the same exact definition).

Although the Subject Property was being rented by Plaintiffs at the time the Plaintiffs obtained the Subject Loan, the use of the property does not determine whether a refinancing constitutes a "debt" within the scope of the FDCPA and FCCPA. "Rather, the purpose for which the debt was incurred determines the nature of the loan, rather than the collateral securing the debt." Graham v. Manley Deas Kochalski LLC, No. 08-CV-120, 2009 WL 891743, at *6 (S.D. Ohio Mar. 31, 2009). In Graham, the court held that "[i]f mortgage refinancing results in less favorable terms for the borrower, courts determine the purpose of the refinancing by the borrower's use of any excess proceeds." Id. "If more than half of those excess proceeds are used for a business purpose, then the loan is a commercial debt." Id. (citing Sherlock v. Herdelin, No. 04-cv-3438, 2008 U.S. Dist. LEXIS 21794 at *4-8 (E.D.Pa. Mar. 17, 2008) and Gambosi v. Carteret Mortgage Corp., et al., 894 F.Supp.176, 181 (E.D.Pa.1995). "On the other hand, if mortgage refinancing

23

results in more favorable terms than the prior loan, the purpose of prior loan should be considered when determining the purpose of the latter loan." Id. (citing Gambosi, 894 F.Supp. at 181).

In Gombosi, the court found that "the [Plaintiffs] were not refinancing to obtain a more favorable interest rate or to obtain lower monthly payments, but were instead refinancing at an interest rate that was a full percentage point higher than that of the existing [] mortgage." 894 F. Supp. at 181. The court further noted that "the payment of outstanding taxes was a necessary prerequisite to protect the first mortgage rights of [the mortgagee]." Id. The court held that "these facts indicate that the refinancing of an existing residential mortgage and the making of tax payments were not the primary purpose of the [refinance] loan." Id. "Rather, the primary purpose of the [refinance] loan was to acquire the remaining proceeds after the satisfaction of all the conditions of obtaining the loan." Id. The court therefore concluded that "the disposition of those remaining proceeds must weigh heavily in determining the primary purpose of the Carteret loan." Id.

Here, like in Gombosi, the interest rate of the Subject Loan was a full percentage point higher than the loan that was being refinanced. PSUF ¶¶ 5-6. Furthermore, it is undisputed that the Plaintiffs' purpose for refinancing the mortgage on the Subject Property and entering into the Subject Loan was to "consolidate some personal debts and to take the accumulated equity out of the property in order to pay off [Plaintiffs'] personal credit cards, pay medical bills, pay off [Plaintiff Richard Drew's] 2003 Isuzu,[5] and pay for improvements to [Plaintiffs'] primary residence." PSUF ¶ 7. After paying the aforementioned debts, the remaining proceeds of the Subject Loan "were placed into [Plaintiffs'] joint checking account, at which time the proceeds were used for family vacations and

---

[5] Dkt. 45, Aff Rolena Drew, ¶ 15, Ex.H.

living expenses, including food, clothing, medical expenses, transportation, and expenses associated with helping [Plaintiffs'] son move from Clearwater, FL to Ft. Lauderdale, FL following his graduation from college, particularly for the period of time from February of 2006 through August of 2006, during which time [Plaintiff Rolena Drew] was unemployed." PSUF ¶ 7.

Moreover, the loan documents obtained from the mortgagee of the Subject Loan identify that the purpose of the Subject Loan was "cashout refinance." The Tangible Benefit Evaluation Form from New Century reflects that the lender evaluated that the loan was in Plaintiffs' best interest because it provides "cash out to the borrower and/or consumer debt consolidation in excess of prepaid finance charges plus the prepayment penalty…to be paid by the borrower at the time of refinance," reflecting cash out of $44,103.89, consumer debt consolidation of $3,162.61, and a tanfible benefit after costs of $42,191.34.[6] The New Century "Pre-Funding Audit Worksheet" identifies the "Loan Purpose" as "Cashout Refinance." [7] Because it is undisputed that Plaintiffs utilized the cash proceeds obtained from the Subject Loan for personal and family purposes, the Subject Loan constitutes a "Debt" under the FDCPA.

B.   The Defendant is a "Debt Collector" Under the FDCPA with Respect to Plaintiffs

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,  debts  owed or  due  or  asserted  to  be  owed  or  due  another." 15 U.S.C. § 1692a(6).

C.   Defendant  violated  15 U.S.C.  §  1692c(a)(2)  and  Fla.  Stat.  §  559.72(18)  when  it communicated  with  Plaintiff  despite  knowledge  that  Plaintiff  was  represented  by  an attorney  with  respect  to  the  alleged  debt

---

[6] Dkt. 45, Aff Rolena Drew, Ex.E.
[7] Dkt. 45, Aff Rolena Drew, Ex.B.

The FDCPA prohibits a debt collector, absent consent from the consumer or leave of court, from communicating with a consumer:

> if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2).

The corresponding provision of the FCCPA, is nearly identical stating:

> In collecting consumer debts, no person shall . . . (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72(18).

Legally neither the FDCPA nor FCCPA specifies any particular language that must be used to put a debt collector on notice that a consumer is represented. See 15 U.S.C. § 1692c(a)(2);  Fla. Stat. § 559.72(18). In this respect, the Federal Trade Commission has stated, "if a debt collector learns that a consumer is represented by an attorney *in connection with the debt*, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor." FTC, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988) (emphasis added).

It is undisputed that Defendant sent Plaintiffs letters dated February 25, 2014 and April 12, 2014, after Plaintiffs filed the instant suit and Defendant had been served, stating that it had procured policies of lender-placed hazard insurance and added the cost of said policies to the

balance of the mortgage account.[8] These communications are considered unlawful attempts to collect a discharged debt. See Perviz v. Ocwen (In re Perviz), 302 B.R. 357, 366 (Bankr.N.D.Ohio 2003) (holding that nearly identical letters sent by Ocwen "informing the Debtors that they were liable for the payment of insurance on a house that they had both abandoned in bankruptcy and then physically vacated" were aimed at collecting a debt, as opposed to merely being a service provided to the debtors).

D.      Defendant violated 1692d(6) when it placed telephone calls to Plaintiff without making meaningful disclosure of its identity

Section 1692d(6) provides that "the placement of telephone calls without meaningful disclosure of the caller's identity" is a violation of the FDCPA. 15 U.S.C. 1692d(6); Bianchi v. P&B Capital Group, LLC, 2011 U.S. Dist. LEXIS 155873, *9 at n. 4 (S.D. Fla. Jan. 20, 2011). "Courts construing Section 1692d(6) have 'uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." Valencia v. The Affiliated Group, Inc., 2008 U.S. Dist. LEXIS 73008, *7 (S.D. Fla. 2008). This rule applies equally to live calls and voicemail messages. See e.g. id. (analyzing a voicemail message) (citing Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) ("defendant violated 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's business in the messages left on plaintiff's answering machine").

Defendant left voicemails on Plaintiff Rolena Drew's cellular telephone number that intentionally, and by design, failed to state that the message was left in an attempt to collect a debt. PSUF ¶ 51. The Eleventh Circuit has specifically addressed this issue, and held that where a debt

---

[8] Dkt. 45, Aff. Rolena Drew, ¶ 22, Ex.O.

collection agency deliberately decided not to disclose that it was debt collector, in an effort to avoid violating the third party disclosure provision under 15 U.S.C.A. §§ 1692c(b), it was nevertheless a violation of the FDCPA, and "its error was not bona fide, since it was not reasonable for agency to violate identification." Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350 (11th Cir. 2009).

**V.      Plaintiffs Are Entitled To Partial Summary Judgment With Respect To Their Slander of Credit Claim**

"Section 1681h(e) [of the Fair Credit Reporting Act (hereafter "FCRA")] provides, in pertinent part, that 'no consumer may bring any action or proceeding in the nature of defamation ... with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.'" Acciard v. Whitney, 2008 WL 5120898, *9 (M.D. Fla. 2008)

In Lofton-Taylor v. Verizon Wireless, 262 Fed. Appx. 999 (11th Cir. 2008), the Eleventh Circuit explained that the preemption provision under the FCRA, "[15 U.S.C. § 1681h(e)] means that where a company furnishes credit information about a consumer to a credit reporting agency pursuant to the Fair Credit Reporting Act, the company furnishing the information is protected from state law defamation and invasion of privacy claims unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer. Id. at 1002 (citing Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 32 (5th Cir.1973) ("Furthermore, the Act does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act.").

The United States Supreme Court has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but

28

reckless ones as well." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). The United States Supreme Court has also held that in the context of claims for defamatory falsehood, "actual malice" means "with knowledge that it was false or with reckless disregard of whether it was false or not." <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964).

In <u>Barton v. Ocwen Loan Servicing LLC</u>, No. CIV. 12-162 MJD, 2013 WL 5781324 (D. Minn. Oct. 25, 2013), the plaintiff filed suit against Ocwen after being denied automobile financing from several lenders, subsequent to which she learned that Ocwen had accessed her credit reports and was illegally reporting that she was past due on a discharged debt. <u>Id</u>. at *5. Plaintiff sued Ocwen alleging, among other things, common law credit defamation. The court cited 1681h(e) of the FCRA, which states that claims for credit defamation are not preempted by the Act with respect to "false information furnished with malice or willful intent to injure such consumer." <u>Id</u>. at *7. The court held that "[t]o demonstrate that information was furnished with malice or willful intent, Plaintiff must provide evidence that Ocwen 'acted with knowledge that it was false or with reckless disregard of whether it was false or not.'" <u>Id</u>. <u>Thornton v. Equifax, Inc.</u>, 619 F.2d 700, 705 (8th Cir.1980) (quoting <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279–80 (1964)).

The record evidence in this action conclusively demonstrates that Ocwen had notice that the Subject Loan had been discharged in bankruptcy and continued to report Plaintiffs to the Credit Reporting Agencies as delinquent. PSUF ¶¶ 16, 20, 25-28, 52-56. To date, Plaintiffs' credit reports continue to reflect that Ocwen is reporting the Subject Loan as "past due." <u>See</u> <u>In re Torres</u>, 367 B .R. 478, 487–88 (Bankr.S.D.N.Y.2007) (finding that a "credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce

the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable.").

**VII.**   **Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that this Court enter summary judgment against Defendant and in favor of the Plaintiffs, and find as follows:

(1) That Defendant willfully or knowingly violated the TCPA with respect to Plaintiff Rolena Drew, (2) that Defendant placed 406 calls to Plaintiff Rolena Drew's cellular telephone number, (3) that Defendant violated the FDCPA with respect to the Plaintiffs, (4) that Defendant violated the FCCPA with respect to the Plaintiffs, (5) find in favor of Plaintiffs with respect to Plaintiffs' Slander of Credit claim as to liability only, leaving the issue of damages for the jury.

Plaintiffs would further respectfully request that this Court enter judgment against the Defendant and award damages to the Plaintiffs under the TCPA, FCCPA and FDCPA in the amount of $611,000.00, calculated as follows:

(1) Damages under the TCPA in the amount of $609,000.00, based on 406 calls multiplied by $1,500 per call, leaving the issue of punitive damages to be determined by the jury, (2) damages under the FDCPA in the amount of $1,000, and (3) damages under the FCCPA in the amount of $1,000, leaving the issue of punitive damages to be determined by the jury.

Pursuant to the above cited authority and the record evidence referenced herein, Plaintiffs respectfully requests that this Court enter summary judgment against Defendant pursuant to Federal Rule of Civil Procedure 56, and award Plaintiffs the damages specified above, in addition to post-judgment interest, in addition to attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2), and for such other relief as this Court deems just and proper

30

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of May, 2015, I caused a copy of the

foregoing to be electronically filed with the Clerk of the District Court using the CM/ECF system,

which will provide electronic notice of the filing to all CM/ECF participants.

*s/David P. Mitchell*
David P. Mitchell, Esquire
Florida Bar No.: 067249
Maney & Gordon, P.A.
5402 Hoover Boulevard
Tampa, Florida 33634
Telephone: (813) 888-6700
Fax: (813) 888-6708
Cell: (813) 454-2819
david@mitchellconsumerlaw.com
d.mitchell@maneygordon.com
v.marrero@maneygordon.com
Counsel for the Plaintiff