**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RICHARD E. DREW and ROLENA C.
DREW,

                                        CASE NO.:  8:14-CV-00369-RAL-TGW

      Plaintiff,

-vs-

OCWEN LOAN SERVICING, LLC,

      Defendant.

_____/

**<u>PLAINTIFFS' TRIAL BRIEF</u>**

      COMES NOW the Plaintiffs, RICHARD E. DREW and ROLENA C. DREW, and present

to this Court and Defendant their Trial Brief:

      Plaintiffs ask this Court:

      To enter judgment in favor of the Plaintiffs and against the Defendant, OCWEN LOAN

SERVICING, LLC (hereafter "OCWEN"), for the following reasons:

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. 3

**STATEMENT OF FACTS** ................................................................................. 6

**LEGAL ARGUMENT: LIABILITY** ................................................................ 11

  **I.**   **Plaintiff's TCPA Claim** ......................................................................... 11

    A.   Statutory Basis for TCPA Claims Regarding Calls Placed to Cellular Telephones ...... 11

    B.   The Calls At Issue Were Placed By Defendant Using An ATDS ................................. 13

    C.   Defendant Did Not Have Plaintiff's Prior Express Consent To Place The Calls At Issue To Plaintiff's Cellular Telephone .......................................................................... 14

    D.   Defendant's Violations of the TCPA Were Willful or Knowing ................................... 15

    E.   Defendant's Affirmative Defenses to the TCPA Claim Are Legally Insufficient ......... 17

  **II.**  **Plaintiffs' FDCPA and FCCPA Claim** .......................................................... 18

    A.   The Subject Loan was a Consumer Debt Under the FDCPA and FCCPA ................... 19

    B.   Defendant OCWEN is a "Debt Collector" Under the FDCPA with Respect to Plaintiffs 21

    C.   Defendant violated 15 U.S.C. § 1692c(a)(2) and Fla. Stat. § 559.72(18) when it communicated with Plaintiff despite knowledge that Plaintiff was represented by an attorney with respect to the alleged debt ...................................................................................... 22

    D.   Defendant violated §§ 1692d, 1692d(5) of the FDCPA and Fla. Stat. § 559.72(7) of the FCCPA, by engaging in conduct in connection with the collection of a debt in such a way as can reasonably be expected to abuse or harass the Plaintiffs ................................................. 23

    E.   Defendant violated 559.72(9) and §1692e(2)(A) ......................................................... 25

  **III.**  **Plaintiffs' Slander of Credit Claim** .......................................................... 26

  **IV.**  **Plaintiffs' Intentional Infliction of Emotional Distress Claim** ................ 28

**DAMAGES** ................................................................................................... 32

  **I.**   **Available Damages Under The TCPA** ......................................................... 32

  **II.**  **Available Damages Under the FDCPA and FCCPA** ................................... 33

  **III.**  **Available Damages for Slander of Credit** .................................................. 34

  **IV.**  **Available Damages for Intentional Infliction of Emotional Distress** ...... 35

  **V.**   **Plaintiffs Are Entitled To Punitive Damages** ........................................... 36

# TABLE OF AUTHORITIES

## Cases

." _R.J. v. Humana of Florida, Inc.,_ 652 So. 2d 360, 365 n.2 (Fla. 1995) ....................................... 29

_Acciard v. Whitney,_ 2008 WL 5120898, *9 (M.D. Fla. 2008) ..................................................... 26

_Alea London Ltd. v. Am. Home Services, Inc.,_ 638 F.3d 768, 776 (11th Cir. 2011) cert. denied,
    132 S. Ct. 553, 181 L. Ed. 2d 397 (U.S. 2011)................................................................... 15

_Bacelli v. MFP, Inc.,_ 729 F. Supp. 1328, 1333 n. 7 (M.D. Fla. 2010) ........................................ 19

_Barker v. Tomlinson,_ 2006 WL 1679645, *3 (M.D. Fla. June 7, 2006)....................................... 34

_Barton v. Ocwen Loan Servicing LLC,_ No. CIV. 12-162 MJD, 2013 WL 5781324 (D. Minn.
    Oct. 25, 2013) ...................................................................................................................... 27

_Bianchi v. P&B Capital Group, LLC,_ 2011 U.S. Dist. LEXIS 155873, *9 at n. 4 (S.D. Fla. Jan.
    20, 2011) ............................................................................................................................... 25

_Breslow v. Wells Fargo Bank, N.A.,_ 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F)
    934, (11th Cir.2014) ............................................................................................................. 12

_Cape Publications, Inc. v. Bridges,_ 387 So. 2d 436, 440 n.6 (Fla. 5th DCA 1980) ................... 35

_Coniglio v. Bank of America, N.A.,_ No. 8:14–CV–01628–EAK–MAP, 2014 WL 5366248, *4
    (M.D. Fla. 2014) ................................................................................................................... 16

_Coton v. Televised Visual X-Ography, Inc.,_ 740 F. Supp. 2d 1299, 1315 (M.D. Fla. 2010)....... 34

_Edwards v. Niagara Credit Solutions, Inc.,_ 584 F.3d 1350 (11th Cir. 2009)............................... 25

_Gambon v. R & F Enterprises, Inc.,_ 2014 U.S. Dist. LEXIS 179125 (M.D. Fla. Dec. 2, 2014).. 12

_Gambosi v. Carteret Mortgage Corp., et al.,_ 894 F.Supp.176, 181 (E.D.Pa.1995) ............... 19, 20

_Graham v. Manley Deas Kochalski LLC,_ No. 08-CV-120, 2009 WL 891743, at *6 (S.D. Ohio
    Mar. 31, 2009) ...................................................................................................................... 19

_Lardner v. Diversified Consultants Inc.,_ 1:13-CV-22751-UU, 2014 WL 1778960, *4 (S.D. Fla.
    2014)................................................................................................................................. 12, 32

_Lary v. Trinity Physician Fin. & Ins. Services,_ 780 F.3d 1101, 1107 (11th Cir. 2015) ............... 15

_Lashley v. Bowman,_ 561 So. 2d 406, 410 (Fla. 5th DCA 1990)........................................... 29, 30

_LeBlanc v. Unifund CCR Partners,_ 601 F.3d 1185, 1191-92 (11th Cir. 2010) ............................ 18

_Legg v. Voice Media Grp., Inc.,_ 20 F. Supp. 3d 1370, 1378 (S.D. Fla. 2014)............................. 18

Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 596 (Fla. 2d DCA 2007) ........................... 29

Lincoln v. Florida Gas Transmission Co. LLC, 608 Fed. Appx. 721, 722 (11th Cir. 2015)........ 29

Lofton-Taylor v. Verizon Wireless, 262 Fed. Appx. 999 (11th Cir. 2008).................................. 26

Mais v. GulfCoast Collection Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014).................... 13

McBeth v. Credit Prot. Ass'n, L.P., 8:14-CV-606-T-36AEP, 2015 WL 4429324, at *4 (M.D. Fla. July 20, 2015) ............................................................................................................................. 16

McCorristone v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2003). ........................... 18

McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) aff'd, 398 F. App'x 467 (11th Cir. 2010)....................................................................................................... 33

Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914 (11th Cir. 2011) ........................... 33

New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964) .................................................................................................................................................... 27

Old Jupiter, supra, 2010 WL 5148467 at *6 ................................................................................ 17

Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836-37 (11th Cir. 2010)......................................... 18

Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.), 883 F.2d 970, 972 (11th Cir.1989) ......... 14

Penny v. Williams & Fudge, Inc., 840 F.Supp.2d 1314 (M.D. Fla. 2012) .................................. 24

Perviz v. Ocwen (In re Perviz), 302 B.R. 357, 366 (Bankr.N.D.Ohio 2003) .................. 23, 37, 38

Regions Bank v. Old Jupiter, LLC, 10-80188-CIV, 2010 WL 5148467, at *5-6 (S.D. Fla. 2010) aff'd, 449 Fed. Appx. 818 (11th Cir. 2011) ............................................................................. 17

Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)...... 27

Southland Corporation v. Bartsch, 522 So.2d 1053 (Fla. 5th DCA), rev. dismissed, 531 So.2d 167 (Fla.1988) ......................................................................................................................... 30

Story v. J. M. Fields, Inc., 343 So. 2d 675, 676-77 (Fla. 1st DCA 1977) .............................. 24, 34

Valencia v. The Affiliated Group, Inc., 2008 U.S. Dist. LEXIS 73008, *7 (S.D. Fla. 2008) ...... 25

Walton v. Clark & Washington, P.C., 454 B.R. 537, 545 (Bankr. M.D. Fla. 2011) .............. 14, 30

**Statutes**

§ 1692d.................................................................................................................................... 23, 24

§ 227(b)(1)(A) ............................................................................................................... 12

11 U.S.C. § 524(a)(2) ............................................................................................... 14, 30

11 U.S.C. § 727 ............................................................................................................... 7

15 U.S.C § 1692k(a) ..................................................................................................... 33

15 U.S.C § 1692k(b) ..................................................................................................... 33

15 U.S.C. § 1681h(e) ..................................................................................................... 26

15 U.S.C. § 1692a(6) ..................................................................................................... 21

15 U.S.C. § 1692c(a)(2) ................................................................................................. 22

15 U.S.C. § 1692c(b) ..................................................................................................... 25

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................. 11, 12, 17

Fla. Stat. § 559.72(18) ................................................................................................... 22

Fla. Stat. § 559.55(1) ..................................................................................................... 19

## Other Authorities

In re Dynasty Mtge., L.L.C., 22 F.C.C.R. 9453 (2007) ................................................. 15

In re Rules and Regulations Implementing the TCPA of 1991, FCC 15–72, 2015 WL 4387780
   (July 10, 2015) ......................................................................................................... 13

In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559
   (Jan. 4, 2008) ........................................................................................................... 13

## Treatises

Restatement (Second) of Torts (1965), § 46 .................................................................. 32

## Regulations

47 C.F.R. § 64.1200 ...................................................................................................... 18

47 U.S.C. § 64.1200 ................................................................................................. 14, 17

## STATEMENT OF FACTS

1.      This action arises out of Defendant OCWEN LOAN SERVICING, LLC's (hereafter "OCWEN") efforts to collect a debt from Plaintiffs that had previously been discharged through Chapter 7 bankruptcy.

2.      On or about September 28, 2005, Plaintiffs executed and delivered a promissory note to New Century Mortgage Corporation (hereafter "New Century") in exchange for and evidencing a loan by New Century to Plaintiffs in the amount of $153,000.00 (hereafter the "Subject Loan"), and executed a mortgage on the same date securing payment of the Subject Loan to New Century (hereafter the "Subject Mortgage") by a single family residential property located at 517 4th Avenue SW, Largo, FL 33770 (hereafter the "Subject Property"), which was recorded in the Pinellas County Official Records at Book 14661, Page 186 on or about October 7, 2005.[1]

3.      On October 15, 2009, Plaintiffs filed a Voluntary Petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code [2] in the United States Bankruptcy Court for the Middle District of Florida, in a case styled: *In re: Richard Edward Drew and Rolena Clinger Drew, Case No. 8:09-bk-23413-CPM, United States Bankruptcy Court, Middle District of Florida* (hereafter the "Subject Bankruptcy Action"), wherein Plaintiffs sought to discharge certain debts, including but not limited to a promissory note evidencing a loan to the Plaintiffs in the amount of $153,000.00 (hereafter the "Subject Loan"), and a mortgage securing payment of the Subject Loan and outlining the Plaintiffs' promise to pay the Subject Loan (hereafter the "Subject Mortgage").[3]

---

[1] See Dkt. 45, Aff. Rolena Drew, ¶ 13, Ex.G

[2] Title 11, United States Code.

[3] This Court "may take judicial notice of bankruptcy court proceedings." Davis v. NCO Fin. Sys., Inc., No. 8:14-CV-198-T-24TGW, 2014 WL 4954705, at *2 (M.D. Fla. Oct. 2, 2014).

4.     In Section D of the Voluntary Petition at page 17, Plaintiffs identified the Subject Loan and Mortgage on the bankruptcy schedules and identified Defendant's predecessor in interest [4] as a secured creditor. Furthermore, in the Statement of Intention of the Voluntary Petition at page 41, Plaintiffs stated their intention to surrender the Subject Property in connection with the discharge of the debt.

5.     Plaintiffs did not at any time enter into an agreement reaffirming the Subject Loan.[5]

6.     On February 2, 2010, the United States Bankruptcy Court in the Subject Bankruptcy Action entered an Order granting Plaintiffs a discharge pursuant to 11 U.S.C. § 727, thereby discharging the Plaintiffs with respect to the Subject Loan (hereafter the "Subject Discharge Order").

7.     After the Subject Discharge Order was entered, Chase reported to the Consumer Reporting Agencies (CRAs) that the Subject Loan had been "Discharged through Bankruptcy Chapter 7," and noted in the "Account History" of said reports that the debt was "included in Chapter 7 Bankruptcy on February 2, 2010." [6]

8.     On or about May 14, 2010, Plaintiffs executed a Quitclaim Deed in favor of CHASE (hereafter the "Subject Quitclaim Deed"), thereby transferring all of Plaintiffs' rights, title and interest in the Subject Property to CHASE, in accordance with Plaintiffs' Statement of Intentions in the Voluntary Petition to surrender same, as described above. The Subject Quitclaim

---

[4] Defendant's predecessor in interest, Chase Home Finance, LLC, was the current servicer of the Subject Loan and Mortgage at the time of the Subject Bankruptcy Action.

[5] Pursuant to 11 U.S.C. § 524(c), an agreement between a creditor and a debtor to reaffirm a dischargeable debt must satisfy all of the requirements set forth therein, including, in part, that the agreement was made before the granting of the discharge under § 727, and that it be filed with the bankruptcy court.

[6] Dkt. 42, Depo. P. Myers, p. 99-100:23-10, Ex. 11; Dkt. 45, Aff. Rolena Drew, ¶ 17, Ex. J, at p. 2.

Deed was recorded in the Pinellas County Official Records at Book 16923, Page 2498 on May 24, 2010.

9.     Approximately two (2) years after the bankruptcy discharge of the Subject Loan, Defendant OCWEN [7] purchased the servicing rights to a bundle of loans from its predecessor in interest, Chase, which included the Subject Loan.[8]

10.     Between March 19, 2012 and April 1, 2012, OCWEN's "loan setup team" began "shell boarding" the Subject Loan, which is the process of "verifying" the information provided by Chase, and "mapping" or uploading it to OCWEN's computer database, Real Servicing.[9]

11.     The information provided to OCWEN by Chase included, among other things, the Plaintiffs' bankruptcy history, including the loan number of the Subject Loan, the filing date of the Subject Bankruptcy Action, the case number of the Subject Bankruptcy Action, and identified the bankruptcy as Chapter 7, identified the Subject Property, identified the Plaintiffs, Richard E. Drew and Rolena C. Drew, and stated "Agreed Order" as the reason the bankruptcy case was closed.[10]

12.     OCWEN began servicing the Subject Loan on April 1, 2012. [11]

13.     At the time Ocwen boarded and mapped into its database, Real Servicing,

---

[7] Ocwen Loan Servicing, LLC, is a subsidiary of Ocwen Financial Corporation. (Dkt. 42, Depo. P. Myers, p. 32-33:17-5). Ocwen Loan Servicing, LLC, operates exclusively as a mortgage servicer. (Id. at 33:14-16). The parent company, Ocwen Financial Corporation, does not independently service mortgages (Id. at 33:17-24).

[8] Dkt. 42, Depo. P. Myers, p. 41-42:12-4

[9] Dkt. 42, Depo. P. Myers, p. 49:8-23, 51:10-21

[10] Dkt. 42, Depo. P. Myers, Ex. 7-9; p. 63-64:20-1, 64:8-10, 21-25, 65:12-20, 66:7-21, 67-68:15-2, 76:3-11

[11] Dkt. 42, Depo. P. Myers, p. 40:18-23, Ex. 4

14.     Upon acquiring the servicing rights to the Subject Loan, OCWEN retained the Law office of Marshall Watson as "foreclosure counsel." [12]

15.     On May 11, 2012, OCWEN performed a credit inquiry with respect to Plaintiff Rolena Drew's credit report. [13]

16.     On or about May 25, 2012, OCWEN began reporting to the CRAs that the Subject Loan was 180 days past due, with a "past due" balance of $64,459, a monthly payment owed in the amount of $1,087, and a total balance owed of $151,423.00, with the same being reflected on the credit reports of Plaintiffs Richard Drew and Rolena Drew. [14]

17.     OCWEN continued reporting the debt to the CRAs on a monthly basis as 180 days past due from April of 2012 through January of 2014. [15]

18.     On August 10, 2013, the Plaintiffs' respective credit reports reflected that Ocwen was reporting the Subject Loan to the CRAs as having a "past due" balance of "$85,282 as of May 2013," and "180 days past due" from April of 2012 through May of 2013, and additionally representing that "foreclosure proceedings [have] started." [16]

19.     On March 5, 2015, the Plaintiffs' respective credit reports reflected that OCWEN was reporting the Subject Loan to the CRAs as "$96,458 past due as of January 2014" and "180

---

[12] Cf. Dkt. 42, Depo. P. Myers, Ex. 5, at p. ML-001561, ML-001555. Mr. Myers testified that Exhibit 5 to his deposition is a true and accurate copy of the Defendant's "account notes," also called "comment log," for the Subject Loan. (Dkt. 42, Depo. P. Myers, p. 161-162:24-6). Mr. Myers further testified that title searches are often done by third parties, such as foreclosure counsel.

[13] Dkt. 42, Depo. P. Myers, p. 76:3-11, Ex. 10; Dkt. 45, Aff. Rolena Drew, ¶ 17, Ex. J, at p. 4

[14] Depo. P. Myers, Ex. 5 at p. ML-001560; Dkt. 45, Aff. Rolena Drew, ¶ 17, Ex. J, at p.3; Dkt. 46, Aff. Richard Drew, ¶ 2, Ex. A, at p.3

[15] Dkt. 45, Aff. Rolena Drew, ¶ 18, Ex. K, at p.2; Dkt. 46, Aff. Richard Drew, ¶ 3, Ex. B, at p.2; Dkt. 42, Depo. P. Myers, p.225:12-16

[16] Dkt. 45, Aff. Rolena Drew, ¶ 17, Ex. J, at p.3; Dkt. 46, Aff. Richard Drew, ¶ 2, Ex. A, at p.3; Dkt. 42, Depo. P. Myers, Ex. 11

days past due" from April of 2012 through January of 2014, with total balance owed of $151,423.00, and representing that "foreclosure proceedings [have] started." [17]

20.      Beginning in May of 2012, Ocwen began mailing monthly Account Statements to the Plaintiffs, identifying the Subject Loan, and asserting various fees and payments alleged to be owed by the Plaintiffs, including, among other things, a "Total Amount Due" and "Past Due Amounts DUE IMMEDIATELY," as well as "late charges," and other fees (emphasis in original). Ocwen continued to mail such statements on a monthly basis through January of 2014.[18]

21.      At the time OCWEN mailed the May 17, 2012 "Account Statement" collection letter to Plaintiffs, OCWEN possessed actual knowledge that the Subject Loan had been discharged over two (2) years prior to the date of said letter through Chapter 7 bankruptcy in February of 2010, as described above.

22.      Thereafter, OCWEN continued to send substantially similar "Account Statement" collection letters to Plaintiffs on a monthly basis, sending approximately twenty (20) such collection letters to Plaintiffs prior to the initiation of this suit.

23.      Additionally, Defendant OCWEN sent numerous letters to Plaintiffs, up to four (4) times per month, regarding a variety of mortgage payment and home owner related issues, including notices from Defendant stating that it had purchased force-placed hazard insurance policies on the Subject Property, which Plaintiffs no longer owned, and had vacated more than two years earlier.

24.      This action was initiated by Plaintiffs, on or about February 12, 2014. (Dkt. 1).

---

[17] Dkt. 45, Aff. Rolena Drew, ¶ 18, Ex. K, at p.2; Dkt. 46, Aff. Richard Drew, ¶ 3, Ex. B, at p.2
[18] Dkt. 45, Aff. Rolena Drew, ¶ 19, Ex. L

25.    Furthermore, after the initiation of this action, Defendant OCWEN continued to communicate directly with Plaintiffs on several occasions in an effort to collect the discharged debt at issue in this action. Specifically, Defendant sent Plaintiffs letters dated February 25, 2014 and April 12, 2014, stating that it had purchased force-placed hazard insurance policies on the Subject Property, and added the cost of said policies to the balance of the previously discharged mortgage loan, which Defendants were now seeking to collect from Plaintiffs.

26.    On June 4, 2014, Plaintiffs filed their Second Amended Complaint (Dkt. 19) against Defendant, in which Plaintiffs assert the following Counts against Defendant OCWEN: Count I – violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* (hereafter "TCPA"); Count II – violation of the Florida Consumer Collection Practices Act, sections 559.55, *et seq.*, Florida Statutes (hereafter "FCCPA"); Count III – violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereafter "FDCPA"); Count IV –Slander of Credit; and Count V – Intentional Infliction of Emotional Distress. (Dkt. 19).

27.    Defendant filed its Answer and Affirmative Defenses (Dkt. 21) to the Second Amended Complaint on June 16, 2014, setting forth nine (9) affirmative defenses. (Dkt. 21).

## LEGAL ARGUMENT: LIABILITY

### I.    Plaintiff's TCPA Claim

A.    Statutory Basis for TCPA Claims Regarding Calls Placed to Cellular Telephones

The provision of the TCPA applicable to the calls at issue in this action, regarding calls placed to cellular telephones, provides as follows, in pertinent part:

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice --
> . . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; [19]

47 U.S.C. § 227(b)(1)(A)(iii).

In sum, "[t]he [TCPA] makes it unlawful to make any call using an automatic telephone dialing system (an 'autodial system' [or 'ATDS']) to a cellular telephone without the prior express consent of the 'called party.'" Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014) (citing 47 U.S.C. § 227(b)(1)(A)(iii); Pub. L. No. 102–243, 105 Stat. 2394). "'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" Lardner v. Diversified Consultants Inc., 1:13-CV-22751-UU, 2014 WL 1778960, *4 (S.D. Fla. 2014)

In Gambon v. R & F Enterprises, Inc., 2014 U.S. Dist. LEXIS 179125 (M.D. Fla. Dec. 2, 2014), this Court held that "in order to establish a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), the plaintiff must demonstrate the following: 1) defendant made a telephone call that either originated in the United States or was received in the United States; 2) using any ATDS or artificial or prerecorded voice; 3) to a telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." [20]

---

[19] The Eleventh Circuit has affirmed that the reference in § 227(b)(1)(A)(iii) to the called party being "charged for the call" does not apply to calls placed to cellular telephones. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1258 (11th Cir. 2014). Accordingly, a plaintiff "is not required to prove that she was charged individually for each of the autodialed calls" in order to state a claim under the TCPA for calls placed to a cellular telephone. Id.

[20] Telephone calls that otherwise violate § 227(b)(1)(A)(iii) may nevertheless be lawful if they were made "for emergency purposes or made with the prior express consent of the called party[.]" Id. at § 227(b)(1)(A). However, the purpose of the call and existence of prior express consent are not elements of a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), but rather are affirmative defenses for which the defendant bears the burden of proof.

B.      The Calls At Issue Were Placed By Defendant Using An ATDS

Plaintiffs will establish at trial that the dialing system utilized by Defendant OCWEN to initiate the calls at issue was at all material times a version of the "Aspect" dialing system, which dials numbers automatically from a list created by OCWEN and loaded into Aspect.[21] No human intervention is required to place the call. Once a call placed by the Aspect dialing system is answered, the Aspect system automatically routes the call to an available collector, and the information for the called party's loan is automatically populated on the collector's computer screen.[22] The Aspect system is a computer, which is programmed to operate based on algorithms.[23] Defendant's designated 30(b)(6) witness, Paul Myers, specifically described the Aspect dialing system as an "automated dialing system."[24]

The FCC has ruled that equipment qualifies as an "automated telephone dialing system" under the TCPA if it can dial numbers automatically, including by calling numbers in a preprogrammed list, irrespective of the presence of a random or sequential number generator. See In re Rules and Regulations Implementing the TCPA of 1991, Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶ 10, 12-15, 2015 WL 4387780 (July 10, 2015) ("2015 FCC Order"). The Eleventh Circuit recently held that FCC Rulings interpreting the TCPA "ha[ve] the force of law" and that "[a] district court [is] without jurisdiction to consider the wisdom and efficacy of [an] FCC Ruling." Mais v. GulfCoast Collection Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014).

---

[21] Dkt. 42, Depo. P. Myers, p. 170:4-15, 175:5-8, 195-196:22-6

[22] Dkt. 42, Depo. P. Myers, p. 173:1-20

[23] Dkt. 42, Depo. P. Myers, p. 178:10-23

[24] See Dkt. 42, Depo. P. Myers, p. 136-137:19-9

C.   Defendant Did Not Have Plaintiff's Prior Express Consent To Place The Calls At Issue To Plaintiff's Cellular Telephone

In its Answer and Affirmative Defenses (Dkt. 21) to Plaintiffs' Second Amended Complaint, Defendant asserts the following as its Third Affirmative Defense:

> Plaintiffs provided Defendant's predecessor-in-interest with "prior express consent" under 47 U.S.C. § 227 and 47 U.S.C. § 64.1200, therefore Plaintiffs should not be granted the relief they have requested under the TCPA.

The FCC has expressly stated that the creditor bears the burden of proving "prior express consent" under the TCPA. In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559, ¶ 10 (Jan. 4, 2008) (hereafter "2008 FCC Ruling"). [25] Because it is undisputed that the Subject Loan was discharged in the Subject Bankruptcy Action, Defendant's "prior express consent" defense is untenable. Pursuant to 11 U.S.C. § 524(a)(2), a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." "A bankruptcy discharge and the concomitant injunction against subsequent actions [provided by section 524(a)] are designed to give the debtor a financial 'fresh start.'" Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.), 883 F.2d 970, 972 (11th Cir.1989). "The purpose of the discharge injunction is 'intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'" Walton v. Clark & Washington, P.C., 454 B.R. 537, 545 (Bankr. M.D. Fla. 2011).

---

[25] The Eleventh Circuit recently held that "[t]he 2008 FCC Ruling [] has the force of law and is an order reviewable under the Hobbs Act in the courts of appeals, and that "[a] district court [is] without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling." Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014).

D.     Defendant's Violations of the TCPA Were Willful or Knowing

"The TCPA does not require any intent for liability except when awarding treble damages." Alea London Ltd. v. Am. Home Services, Inc., 638 F.3d 768, 776 (11th Cir. 2011) cert. denied, 132 S. Ct. 553, 181 L. Ed. 2d 397 (U.S. 2011) "Importantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely "knowing" conduct." Id.

"The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute. Lary v. Trinity Physician Fin. & Ins. Services, 780 F.3d 1101, 1107 (11th Cir. 2015). Accordingly, to willfully or knowingly violate the section of the TCPA at issue in this action, 227(b)(1)(A)(iii), OCWEN must know that it is using an "automatic telephone dialing system" to place a call without the "prior express consent" of the Plaintiff. A TCPA plaintiff is not, however, required to prove that the defendant actually knew it was violating the TCPA in order to establish that the defendant willfully or knowingly violated the TCPA. See In re Dynasty Mtge., L.L.C., 22 F.C.C.R. 9453, 9470, fn. 86 (2007) (a willful violation of the TCPA means that the "violator knew that he was doing the act in question . . . [the] violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance").

The record evidence in this action, which Plaintiffs will introduce at trial, conclusively demonstrates that Defendant knew that it was performing the conduct that violated the TCPA with respect to Plaintiff. To wit, the evidence demonstrates that Defendant knew – and in fact, concedes – that the dialing system it utilized to initiate the calls at issue to Plaintiff Rolena Drew's cellular telephone – the "Aspect" dialing system – was an "automatic telephone dialing system" under the

TCPA.[26] Moreover, the evidence at trial will demonstrate that Defendant knew that it did not have Plaintiff's "prior express consent" to place the autodialed calls to Plaintiff's cellular telephone. Furthermore, the evidence at trial will demonstrate that Defendant had actual or constructive knowledge that the debt it sought to collect in making the calls at issue had been discharged in bankruptcy. Moreover, the evidence introduced at trial will demonstrate that Defendant was instructed on numerous occasions by Plaintiff Rolena Drew that the Subject Loan had been discharged in bankruptcy, and to stop calling.

By operation of the discharge injunction,[27] OCWEN was at all material times expressly prohibited from calling Plaintiff to collect the discharged debt, and thus, all of the calls at issue in this action constitute willful or knowing violations of the TCPA. Moreover, after Plaintiff verbally instructed OCWEN's representatives that the subject debt had been discharged, and demanded that OCWEN cease placing said calls, the Defendant's continued debt collection calls to Plaintiff's cellular telephone further the willful and/or knowing nature of OCWEN's TCPA violations. See McBeth v. Credit Prot. Ass'n, L.P, 8:14-CV-606-T-36AEP, 2015 WL 4429324, at *4 (M.D. Fla. July 20, 2015) ("each call placed by Defendant after the Plaintiffs instructed Defendant that it does not have consent to call the Plaintiffs' respective cellular telephone numbers constitutes a 'willful' and/or 'knowing' violation warranting the trebling of the award"). Accordingly, all of the calls placed by OCWEN to Plaintiff Rolena Drew's cellular telephone were willful or knowing violations of the TCPA warranting treble damages of $1,500 per call.

---

[26] See Dkt. 42, Depo. P. Myers, p. 136-137:19-9

[27] Pursuant to 11 U.S.C. § 524, a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

E.     Defendant's Affirmative Defenses to the TCPA Claim Are Legally Insufficient

In its Answer and Affirmative Defenses (Dkt. 21), Defendant asserts additional purported

Affirmative Defenses to Plaintiffs' TCPA claim. As its First Affirmative Defense, Defendant states

as follows:

> Plaintiffs have unclean hands because Plaintiffs have engaged in a course of
> conduct designed to manufacture a lawsuit, and therefore Plaintiffs should not
> be granted the requested relief.

As its Second Affirmative Defense, Defendant states as follows:

> Plaintiffs have and/or had an established business relationship with Defendant
> and/or Defendant's predecessor-in-interest under 47 U.S.C. § 227 and 47 U.S.C.
> § 64.1200;[28] therefore, Plaintiffs should not be granted the relief they have
> requested under the TCPA in whole or in part.

None of Defendant's above Affirmative Defenses to the TCPA claim state a legally

sufficient defense based on the facts at issue in this action. With respect to Defendant's First

Affirmative Defense, it is well settled that the defense of "unclean hands" is not a legally valid

defense in actions for money damages. "The equitable doctrine of 'unclean hands' applies when a

party seeking *equitable* relief has committed an unconscionable act immediately related to the

*equity* the party seeks in respect to the litigation." Regions Bank v. Old Jupiter, LLC, 10-80188-

CIV, 2010 WL 5148467, at *5-6 (S.D. Fla. 2010) aff'd, 449 Fed. Appx. 818 (11th Cir. 2011).

"Where [] a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable"

Id. at *6. [29]

---

[28] Defendant refers to 47 U.S.C. § 64.1200; however, no such statute exists under the United States Code.
Defendant ostensibly intended to reference 47 C.F.R. § 64.1200, in the Code of Federal Regulations.
However, this regulation does not apply to TCPA violations arising out of calls placed to cellular
telephones, as more fully set forth *infra*.

[29] To the extent Defendant's unclean hands defense is intended to assert failure to mitigate, the law is
likewise well settled that "failure to mitigate is not a viable defense against TCPA liability" and a defendant
in a TCPA action "is precluded from asserting this defense." Lardner v. Diversified Consultants Inc., 17 F.
Supp. 3d 1215, 1220 (S.D. Fla. 2014) .

Plaintiffs seek statutory money damages in this action for Defendant's violations of the TCPA, and the defense of unclean hands does not bar the Plaintiffs from recovering monetary damages against the Defendant in this suit for its violations of the TCPA. With respect to Defendant's Second Affirmative Defense, "the established business relationship exemption does not apply to [] claims under 47 U.S.C. § 227(b)(1)(A)(iii) for calls to [] cellular telephone[s], and instead applies only to calls to land lines." Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1378 (S.D. Fla. 2014). "Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." Id.

## II.   Plaintiffs' FDCPA and FCCPA Claim

"In 1977 Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836-37 (11th Cir. 2010). "The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1191-92 (11th Cir. 2010)

In order to prevail on their FDCPA claims, Plaintiffs must prove that: (1) they were the object of collection activity arising from a consumer debt; (2) Defendant is a debt collector as defined by the FDCPA; and (3) Defendant engaged in an act or omission prohibited by the FDCPA. See McCorristone v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2003). Similarly, in order to prevail on their claim under the FCCPA, Plaintiffs must prove: (1) they were the object of collection activity arising from a consumer debt; and (2) Defendant engaged in an act

18

or omission prohibited by the FCCPA. See Oppenheim, supra, 627 F.3d at 836-37. However, unlike the FDCPA the FCCPA applies to *all persons* collecting consumer debts, not just debt collectors. See Bacelli v. MFP, Inc., 729 F. Supp. 1328, 1333 n. 7 (M.D. Fla. 2010) (noting "The FCCPA differs from the FDCPA, in part, in that it prohibits acts "of persons" and, accordingly, is not limited to debt collectors.").

A.      The Subject Loan was a Consumer Debt Under the FDCPA and FCCPA

Both the FDCPA and FCCPA define "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1);

Although the Subject Property was being rented by the Plaintiffs at the time the Plaintiffs obtained the Subject Loan, the use of the property does not determine whether a refinance loan constitutes a "debt" within the scope of the FDCPA and FCCPA. "Rather, the purpose for which the debt was incurred determines the nature of the loan, rather than the collateral securing the debt." Graham v. Manley Deas Kochalski LLC, No. 08-CV-120, 2009 WL 891743, at *6 (S.D. Ohio Mar. 31, 2009). In Graham, the court held that "[i]f mortgage refinancing results in less favorable terms for the borrower, courts determine the purpose of the refinancing by the borrower's use of any excess proceeds." Id. "If more than half of those excess proceeds are used for a business purpose, then the loan is a commercial debt." Id. "On the other hand, if mortgage refinancing results in more favorable terms than the prior loan, the purpose of prior loan should be considered when determining the purpose of the latter loan." Id.

In <u>Gambosi v. Carteret Mortgage Corp., et al.</u>, 894 F.Supp.176, 181 (E.D.Pa.1995) the court found that "the [Plaintiffs] were not refinancing to obtain a more favorable interest rate or to obtain lower monthly payments, but were instead refinancing at an interest rate that was a full percentage point higher than that of the existing [] mortgage." <u>Id</u>. at 181. The court further noted that "the payment of outstanding taxes was a necessary prerequisite to protect the first mortgage rights of [the mortgagee]." <u>Id</u>. The court held that "these facts indicate that the refinancing of an existing residential mortgage and the making of tax payments were not the primary purpose of the [refinance] loan." <u>Id</u>. "Rather, the primary purpose of the [refinance] loan was to acquire the remaining proceeds after the satisfaction of all the conditions of obtaining the loan." <u>Id</u>. The court therefore concluded that "the disposition of those remaining proceeds must weigh heavily in determining the primary purpose of the [subject] loan." <u>Id</u>.

The evidence introduced at trial in this matter will demonstrate that, like in <u>Gombosi</u>, the interest rate of the Subject Loan was a full percentage point higher than the loan that was being refinanced. Furthermore, the evidence at trial will demonstrate that the Plaintiffs' purpose for refinancing the mortgage on the Subject Property and entering into the Subject Loan was to "consolidate some personal debts and to take the accumulated equity out of the property in order to pay off [Plaintiffs'] personal credit cards, pay medical bills, pay off [Plaintiff Richard Drew's] 2003 Isuzu,[30] and pay for improvements to [Plaintiffs'] primary residence."[31] After paying the aforementioned debts, the remaining proceeds of the Subject Loan "were placed into [Plaintiffs'] joint checking account, at which time the proceeds were used for family vacations and living expenses, including food, clothing, medical expenses, transportation, and expenses associated with helping

---

[30] Dkt. 45, <u>Aff Rolena Drew</u>, ¶ 15, Ex.H.

[31] Dkt. 45, <u>Aff. Rolena Drew</u>, ¶ 14

[Plaintiffs'] son move from Clearwater, FL to Ft. Lauderdale, FL following his graduation from college, particularly for the period of time from February of 2006 through August of 2006, during which time [Plaintiff Rolena Drew] was unemployed." [32]

Moreover, the loan documents obtained from the mortgagee of the Subject Loan, which Plaintiffs intend to introduce into evidence at trial, identify that the purpose of the Subject Loan was "cashout refinance." By way of example, the Tangible Benefit Evaluation Form from New Century reflects that the lender evaluated that the loan was in Plaintiffs' best interest because it provides "cash out to the borrower and/or consumer debt consolidation in excess of prepaid finance charges plus the prepayment penalty…to be paid by the borrower at the time of refinance," reflecting cash out of $44,103.89, consumer debt consolidation of $3,162.61, and a tanfible benefit after costs of $42,191.34.[33] The New Century "Pre-Funding Audit Worksheet" identifies the "Loan Purpose" as "Cashout Refinance." [34] Because the evidence that will be introduced at trial will demonstrate that Plaintiffs utilized the cash proceeds obtained from the Subject Loan for personal and family purposes, the jury should find that the Subject Loan constitutes a consumer debt under the FDCPA and FCCPA.

B.   Defendant OCWEN is a "Debt Collector" Under the FDCPA with Respect to Plaintiffs

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,  debts  owed or  due  or  asserted  to  be  owed  or  due  another." 15 U.S.C. § 1692a(6).

---

[32] Dkt. 42, Aff. Rolena Drew, ¶ 14

[33] Dkt. 45, Aff Rolena Drew, Ex.E.

[34] Dkt. 45, Aff Rolena Drew, Ex.B.

"[A] debt collector does not include 'the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" Eke v. FirstBank Florida, 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011). However, where a creditor purchases or otherwise obtains an assignment of a debt after it is in default, it is considered a debt collector under the FDCPA, not a creditor. Balthazor v. Sec. Credit Services, LLC, 11-60867-CIV, 2012 WL 171097, at *4 (S.D. Fla. 2012). Although it is undisputed that the Subject Loan was discharged in bankruptcy more than two (2) years prior to Defendant purchasing the servicing rights for the Subject Loan from Chase, it is likewise undisputed that Defendant treated the Subject Loan as being in default upon its acquisition and servicing thereof. Defendant's treatment of the Subject Loan, and its conduct in attempting to collect the Subject Loan from Plaintiffs, demonstrates that it is a debt collector under the FDCPA, as set forth above.

C.     Defendant violated 15 U.S.C. § 1692c(a)(2) and Fla. Stat. § 559.72(18) when it communicated with Plaintiff despite knowledge that Plaintiff was represented by an attorney with respect to the alleged debt

Pursuant to § 1692c(a)(2) of the FDCPA, a debt collector is prohibited, absent consent from the consumer or leave of court, from communicating with a consumer:

> if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

The corresponding provision of the FCCPA, Fla. Stat. § 559.72(18), is nearly identical stating:

> In collecting consumer debts, no person shall . . . (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

22

Legally neither the FDCPA nor FCCPA specifies any particular language that must be used to put a debt collector on notice that a consumer is represented. See 15 U.S.C. § 1692c(a)(2);  Fla. Stat. § 559.72(18). In this respect, the Federal Trade Commission has stated, "if a debt collector learns that a consumer is represented by an attorney *in connection with the debt*, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor." FTC, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988) (emphasis added).

Plaintiffs will introduce evidence at trial demonstrating that Defendant sent letters directly to the Plaintiffs dated February 25, 2014 and April 12, 2014, *after* Plaintiffs filed the instant suit, after Defendant had been served, and after counsel for Defendant had appeared on its behalf in this action, stating that it had purchased force-placed hazard insurance policies on the Subject Property, and that Plaintiffs were responsible for paying the charges for said policies. [35] Letters nearly identical to these from OCWEN have previously been held to be unlawful attempts to collect a discharged debt. See Perviz v. Ocwen (In re Perviz), 302 B.R. 357, 366 (Bankr.N.D.Ohio 2003) (holding that letters sent by Ocwen "informing the Debtors that they were liable for the payment of insurance on a house that they had both abandoned in bankruptcy and then physically vacated" were aimed at collecting a debt, as opposed to merely being a service provided to the debtors).

D.     Defendant violated §§ 1692d, 1692d(5) of the FDCPA and Fla. Stat. § 559.72(7) of the FCCPA, by engaging in conduct in connection with the collection of a debt in such a way as can reasonably be expected to abuse or harass the Plaintiffs

Conduct that would violate § 1692d is not limited to call volume; rather, § 1692 was purposefully drawn to be a "catch all provision," with its sub-sections representing a "non-exhaustive list" of prohibited conduct. See Penny v. Williams & Fudge, Inc., 840 F.Supp.2d 1314

---

[35] Dkt. 45, Aff. Rolena Drew, ¶ 22, Ex.O.

(M.D. Fla. 2012) (explaining that the FDCPA's "catch all provision [28 U.S.C. § 1692d] was purposely broadly drawn" to "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed"); <u>Meadows v. Franklin Collection Service, Inc.</u>, 414 Fed. Appx. 230, 232–233 (11th Cir.2011) (noting the subsections are "a non-exhaustive list of prohibited conduct").

Section 559.72, Florida Statutes, states, in relevant part, that "[i]n collecting consumer debts, no person shall:

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

The above FCCPA provision is analogous to the FDCPA's "catch all" provision – 15 U.S.C. § 1692d – and is likewise construed as being purposefully broadly drawn to enable the trier of fact, where appropriate, to proscribe other "other conduct" pursuant to clause II which is not specifically addressed under clause I. <u>See</u> <u>Story v. J. M. Fields, Inc.</u>, 343 So. 2d 675, 676-77 (Fla. 1st DCA 1977).

Accordingly, the jury will determine whether the entirety of the allegedly unlawful conduct by OCWEN in attempting to collect the discharged subject loan constitutes conduct which can reasonably be expected to abuse or harass the Plaintiffs or any member of her or his family. Plaintiffs will introduce evidence demonstrating that Defendant's conduct was such that it was reasonably expected to abuse or harass the Plaintiffs.

D.   <u>Defendant violated 1692d(6) when it placed telephone calls to Plaintiff without making meaningful disclosure of its identity</u>

Section 1692d(6) provides that "the placement of telephone calls without meaningful disclosure of the caller's identity" is a violation of the FDCPA. 15 U.S.C. 1692d(6); <u>Bianchi v.</u>

*P&B Capital Group, LLC*, 2011 U.S. Dist. LEXIS 155873, *9 at n. 4 (S.D. Fla. Jan. 20, 2011).

"Courts construing Section 1692d(6) have 'uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." *Valencia v. The Affiliated Group, Inc.*, 2008 U.S. Dist. LEXIS 73008, *7 (S.D. Fla. 2008). This rule applies equally to live calls and voicemail messages. *Id.*

Plaintiffs will introduce evidence at trial demonstrating that Defendant's representatives left voicemails on Plaintiff Rolena Drew's cellular telephone number that intentionally, and by design, failed to state that the message was left in an attempt to collect a debt, and that its failure to do so is a corporate policy that its representatives are trained to follow. [36] The Eleventh Circuit has specifically addressed this issue, and held that where a debt collection agency deliberately decided not to disclose that it was debt collector, in an effort to avoid violating the FDCPA's third party disclosure provision, 15 U.S.C. § 1692c(b), it was nevertheless a violation of the FDCPA, and "its error was not bona fide, since it was not reasonable for agency to violate identification." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350 (11th Cir. 2009).

E.    Defendant violated 559.72(9) and §1692e(2)(A)

The FDCPA, 15 U.S.C. §1692e(2)(A), prohibits debt collectors from falsely representing the character, amount or legal status of a debt. The FCCPA, Fla. Stat. § 559.72(9), makes it unlawful to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

Defendant's efforts to collect the Subject Loan from Plaintiffs, despite it having been discharged in bankruptcy, and despite Defendant's knowledge of the discharge, constitute violations of these FDCPA and FCCPA provisions. Plaintiffs will introduce evidence at trial

---

[36] Dkt. 42, Depo. P. Myers, p. 152-153:4-23, Ex.22.

demonstrating that Defendant had actual or constructive knowledge that the debt had been discharged prior to placing the collection calls to Plaintiff Rolena Drew'

**III.    Plaintiffs' Slander of Credit Claim**

Plaintiffs' claim for Slander of Credit against OCWEN is in the nature of defamation under Florida common law. Plaintiffs claim that OCWEN reported false statements about them to the Consumer Reporting Agencies, which was reported on their credit reports, and that in making these reports to the Consumer Reporting Agencies, OCWEN knew that they were false or exhibited a reckless and/or knowing disregard for their truth or falsity, and that as a result thereof, Plaintiffs have been harmed, including by their credit scores and credit worthiness being significantly impaired.

"Section 1681h(e) [of the Fair Credit Reporting Act (hereafter "FCRA")] provides, in pertinent part, that 'no consumer may bring any action or proceeding in the nature of defamation ... with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.'" Acciard v. Whitney, 2008 WL 5120898, *9 (M.D. Fla. 2008). In Lofton-Taylor v. Verizon Wireless, 262 Fed. Appx. 999 (11th Cir. 2008), the Eleventh Circuit explained that the preemption provision under the FCRA, "[15 U.S.C. § 1681h(e)] means that where a company furnishes credit information about a consumer to a credit reporting agency pursuant to the Fair Credit Reporting Act, the company furnishing the information is protected from state law defamation and invasion of privacy claims unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer. Id. at 1002 The United States Supreme Court has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless

ones as well." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). The United States Supreme Court has also held that in the context of claims for defamatory falsehood, "actual malice" means "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964).

It is worth noting that OCWEN has been subject to this claim in the recent past for reporting discharged debts, similar to this action. In Barton v. Ocwen Loan Servicing LLC, No. CIV. 12-162 MJD, 2013 WL 5781324 (D. Minn. Oct. 25, 2013), the plaintiff filed suit against Ocwen after being denied automobile financing from several lenders, subsequent to which she learned that Ocwen had accessed her credit reports and was illegally reporting that she was past due on a discharged debt. Id. at *5. Plaintiff sued Ocwen alleging, among other things, common law credit defamation. The court cited 1681h(e) of the FCRA, which states that claims for credit defamation are not preempted by the Act with respect to "false information furnished with malice or willful intent to injure such consumer." Id. at *7. The court held that "[t]o demonstrate that information was furnished with malice or willful intent, Plaintiff must provide evidence that Ocwen 'acted with knowledge that it was false or with reckless disregard of whether it was false or not.'" Id.

The record evidence in this action, which will be introduced by Plaintiffs at trial, conclusively demonstrates that prior to OCWEN first reporting the discharged debt to the CRAs, OCWEN had notice that the Subject Loan had been discharged in bankruptcy, and nevertheless began reporting adverse credit information about the Plaintiffs to the CRAs on a monthly basis. Moreover, even after the Plaintiffs filed this action against OCWEN, thereby providing OCWEN with clear and unmistakable notice that its debt collection activities and credit reporting were unlawful, and that the debt had been properly discharged, OCWEN continued to report adverse

credit information to the CRAs, including that Plaintiffs owed a "past due" balance of nearly $100,000, reporting that foreclosure proceedings are pending in relation to the debt, and reporting that plaintiffs were 180 days late on payments throughout 2012 and 2013. The evidence introduced at trial will show that well over a year after this suit was initiated, OCWEN continued to report the discharged debt as "past due" in an amount of nearly $100,000, and has continued to report that foreclosure proceedings are underway. [37]

Plaintiffs intend to introduce evidence at trial demonstrating that Defendant's ongoing and continuous reporting of false negative information to the CRAs caused significant damage to their credit ratings, which continued to worsen as OCWEN continued to report an escalating "past due" balance, and that they were denied financing on several occasions in 2013 and 2014 as a result of OCWEN's adverse credit reporting. By way of example, Plaintiffs will introduce evidence at trial demonstrating that Plaintiffs were denied financing for a credit card by MIDFLORIDA Credit Union in April of 2013, and that Plaintiffs were denied automobile financing by Bank of America, N.A., in October of 2014. Plaintiffs will also introduce evidence reflecting the only credit card Plaintiffs were able to get approved for during this time period provided extremely unfavorable terms, including a credit limit of $700, with a $175 pre-paid annual fee, and an annual percentage rate of interest of thirty-six percent (36%).

## IV.   __Plaintiffs' Intentional Infliction of Emotional Distress Claim__

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the

---

[37] See In re Torres, 367 B .R. 478, 487–88 (Bankr.S.D.N.Y.2007) (finding that a "credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable.").

conduct caused the emotional distress, and (4) the emotional distress was severe." Lincoln v. Florida Gas Transmission Co. LLC, 608 Fed. Appx. 721, 722 (11th Cir. 2015). Thus, the tort of intentional infliction of emotional distress arises in situations where the actor "acts reckless, [] in deliberate disregard of a high degree of probability that the emotional distress will follow." R.J. v. Humana of Florida, Inc., 652 So. 2d 360, 365 n.2 (Fla. 1995) (quoting Restatement (Second) of Torts (1965), § 46, cmt. i).

Accordingly, the issues for the jury to decide with respect to the Plaintiffs' Intentional Infliction of Emotional Distress claim are (1) whether OCWEN engaged in extreme and outrageous conduct, (2) with the intent to cause severe emotional distress, or with reckless disregard of the high probability of causing severe emotional distress; and (3) if so, whether Defendant's extreme and outrageous conduct was a legal cause of severe emotional distress to Plaintiff ROLENA DREW.

Under Florida law, "[w]hen the conduct smacks of extortion, this tort [of intentional infliction of emotional distress] is likely to be present." Lashley v. Bowman, 561 So. 2d 406, 410 (Fla. 5th DCA 1990). "Both the Restatement and case law also recognize a line of authority finding liability where the relationship that supplies the 'special authority' involves a utility, a common carrier, an innkeeper or a creditor." Id. at 410, n.4. See also Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 596 (Fla. 2d DCA 2007) ("[Section 46] comment 'e' explains that the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for a claim of intentional infliction of emotional distress").

In Lashley, the court reversed the trial court's award of summary judgment to the defendant, holding that "[i]f appellant's version of the facts is believed, a jury could find appellee's

calculated use of emotional distress to extort money sufficiently outrageous to warrant recovery for the tort of intentional infliction of emotional distress." Id. at 410. The court distinguished the facts at issue from those in Southland Corporation v. Bartsch, 522 So.2d 1053 (Fla. 5th DCA), rev. dismissed, 531 So.2d 167 (Fla.1988), "where the merchant did no more than insist upon his legal rights in a permissible way." Id. The court concluded that "[o]n this record, it cannot be said as a matter of law that appellee did no more than insist upon his legal rights in a permissible way." Id. "That is for a jury to decide." Id.

Extortion is defined as "the act or practice of obtaining something or compelling some action by illegal means, as by force or coercion." Black's Law Dictionary 2666 (2nd ed. 2001). OCWEN's conduct towards the Plaintiffs constitutes extortion pursuant to the above definition. Furthermore, the Defendant – a creditor -- attempting to enforce an illegitimate debt against the Plaintiffs, including by adversely reporting the debt to the CRAs as a delinquent debt on Plaintiffs' credit reports, placing hundreds of collection calls to Plaintiffs, and threatening to take legal action against Plaintiffs seeking to recover the balance of the note on property that the Plaintiffs no longer owned, is the very definition of a creditor relationship that supplies the "special authority" described in Lashley, in which liability for this tort is often found.

"The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start." Walton v. Clark & Washington, P.C., 454 B.R. 537, 545 (Bankr. M.D. Fla. 2011) (quoting H.R.Rep. No. 95–595, at 365–66 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6322; S.Rep. No. 95–989, at 80 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5866). As a result of OCWEN's conduct, Plaintiffs have been denied their fresh start, and have been held prisoner by OCWEN's repeated debt collection efforts, adverse credit reporting,

and refusal to acknowledge that the debt it sought to collect was a legal nullity which Defendant was prohibited from even attempting to collect. Moreover, the evidence at trial will demonstrate that OCWEN has been subjected to damages in the past for nearly identical conduct with respect to discharged debts.

Plaintiffs have set forth facts which, if accepted as true, a jury could find sufficiently outrageous. This above described conduct plainly alleges "act[s] or practice[s] of obtaining something or compelling some action by illegal means," and is therefore extortion by definition. Plaintiffs submit that based upon the above cited authority, the conduct engaged in by OCWEN in attempting to collect the discharged debt from the Plaintiffs, is sufficiently outrageous to satisfy the elements of intentional infliction of emotional distress.

With respect to whether OCWEN's conduct caused Plaintiff Rolena Drew to sustain severe emotional distress, comment j to Section 46 of the Restatement (Second) of Torts states that severe distress "must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." Thus, the extremity of OCWEN's conduct is, in and of itself, important evidence of the severity of distress experienced by the Plaintiffs. Furthermore, Plaintiffs intend to introduce testimony at trial from Plaintiff Rolena Drew's treating physician, Nicholas Z. Okeson, D.O.,[38] as well as from her psychiatric counselor, Sharon Grosser, and from her husband and her children, Shawn Clinger and Aaron Drew, to establish that Plaintiff has suffered severe emotional distress, which was directly and proximately caused by OCWEN's extreme and outrageous conduct towards the Plaintiffs.

---

[38] Cf. Depo. N. Okeson, p. 12:16-23. See also Dkt. 36, Order Denying Defendant's Motion in Limine, in which this Court held that "Dr. Okeson may testify as the Plaintiff Rolena Drews' treating physician," and may testify related to the issue of causation for Plaintiff's emotional distress-related claims, if his testimony "is in conformity with the principles governing a treating physicians' testimony as outlined by the Eleventh Circuit Court of Appeals in Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1316-18 (11th Cir. 2011)."

## DAMAGES

### I.    Available Damages Under The TCPA

"'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" <u>Lardner</u>, supra, 2014 WL 1778960, *4 (S.D. Fla. 2014). "The statute further specifies that the appropriate remedy is 'an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.'" <u>Osorio</u>, 746 F.3d 1242, 1250 (11th Cir. 2014) "Treble damages are also available for knowing or willful violations." <u>Id</u>.

Defendant admits to placing 215 calls to Plaintiff Rolena Drew's cellular telephone number, 727-688-0821, between April 20, 2013 and February 13, 2014.[39] However, Plaintiff will introduce evidence at trial demonstrating that Defendant's call log is incomplete, and that Defendant placed additional calls to Plaintiff Rolena Drew's cellular telephone number that are not reflected on its call log, including a call on July 10, 2013. [40] Defendant concedes the possibility that its call log is incomplete, and that Plaintiff may have received calls from Defendant that are not reflected on its call log.[41]  Defendant placed an average of approximately five (5) calls per week to Plaintiff Rolena Drew's cellular telephone number from July 27, 2012 to April 20, 2013, following the same pattern it used from April 20, 2013 to February 13, 2014.[42] Accordingly, the actual number of calls placed by the Defendant to Plaintiff's cellular telephone is no less than 406

---

[39] See Dkt. 42, <u>Depo. P. Myers</u>, p:167:7-10, Ex. 24.

[40] Dkt. 42, <u>Depo. P. Myers</u>, pp. 182:1-17; 184-185:20-4; 195:3-20; Ex. 26; Dkt. 45, <u>Aff. Rolena Drew</u>, ¶¶ 3,4,6,7, Ex. A; Dkt. 48, Aff. R. Snyder, ¶¶ 24, 32

[41] Dkt. 42, <u>Depo. P. Myers</u>, p. 195:3-20

[42] Aff Rolena Drew, ¶ 7

calls, which includes the 215 calls Defendant admitted to placing, plus the 190 calls received by Plaintiff from July 27, 2012 to April 20, 2013,[43] and the call received on July 10, 2013.

Because all of the calls placed by OCWEN to Plaintiff Rolena Drew's cellular telephone constituted willful or knowing violations of the TCPA, then in the event the jury find that Defendant placed 406 calls to Plaintiff's cellular telephone, the appropriate measure of statutory damages for Defendant's willful or knowing violations of the TCPA based on $1,500 per call is $609,000.00.

## II.    Available Damages Under the FDCPA and FCCPA

Violations of the FDCPA and the FCCPA are each punishable by an award of statutory damages of up to $1,000.00, in addition to actual damages, plus reasonable attorneys' fees and costs. 15 U.S.C § 1692k(a); Fla. Stat. § 559.77(2). In addition, the FCCPA provides for the recovery of punitive damages. Fla. Stat. § 559.77(2).

"Actual damages under the FDCPA [and FCCPA] include damages for emotional distress." Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914 (11th Cir. 2011). With respect to establishing actual damages related to emotional distress, "[s]tate law requirements that must be proven to establish negligent or intentional infliction of emotional distress are inapplicable." McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) aff'd, 398 F. App'x 467 (11th Cir. 2010). Additionally, causation for emotional distress damages under the FDCPA and FCCPA may be established through lay testimony. Id.

In the event the jury in this action finds that OCWEN violated the FDCPA and FCCPA with respect to the Plaintiffs, the jury will award the Plaintiffs statutory damages in an amount not

---

[43] The time period from July 27, 2012 to April 20, 2013 constitutes exactly thirty-seven (37) weeks. A calculation of 5 calls per week during this 37 week period equals 190 calls.

to exceed $1,000 under the FDCPA and up to $1,000 under the FCCPA. In determining the amount of statutory damages to be awarded, the FDCPA and FCCPA provide that the jury shall consider, among other relevant factors, "the nature of the defendant's noncompliance with the [FDCPA and FCCPA], the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." See Fla. Stat. § 559.77(2); 15 U.S.C § 1692k(b).

Moreover, if the jury finds in favor of the Plaintiffs under the FDCPA and/or FCCPA, it will have to determine whether Plaintiffs suffered actual damages, including emotional distress, and will consider whether Plaintiffs proved that they have suffered from anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life. With respect to awarding damages for mental anguish, Florida Standard Jury Instruction 501.2 states that "[t]here is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence."

With respect to punitive damages, recovery of punitive damages under the FCCPA requires a showing of "malice" by the Defendant. Story, 343 So.2d at 677. Malice, for purposes of the FCCPA, "imports a wrongful act done to inflict injury or without a reasonable cause or excuse" Id. See also Barker v. Tomlinson, 2006 WL 1679645, *3 (M.D. Fla. June 7, 2006) (An egregious violation of the FCCPA supports an award of punitive damages).

## III.   **Available Damages for Slander of Credit**

"In determining the types of compensatory damages recoverable in a defamation suit, Florida law recognizes two classes: general and special." Bobenhausen v. Cassat Ave. Mobile Homes, Inc., 344 So. 2d 279, 281 (Fla. 1st DCA 1977) writ discharged, 363 So. 2d 1065 (Fla. 1978). Moreover, Florida law allows for recovery of damages for mental suffering in defamation cases, and Florida's impact rule is inapplicable. Tanner v. Hartog, 696 So. 2d 705, 708 (Fla. 1997).

34

Accordingly, if the jury finds for the Plaintiffs on their Slander of Credit claim, the jury will consider whether Plaintiffs sustained any injury to their reputation or health, and any shame, humiliation, mental anguish, and hurt feelings experienced in the past or to be experienced in the future. As noted above, Florida Standard Jury Instruction 501.2 states that there is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in the light of the evidence. The jury will also consider any economic damages sustained by Plaintiffs as a result of the false credit reporting, including damages resulting from any inability to obtain financing. If the jury finds for Plaintiffs but finds that no loss, injury or damage has been proved, it will be instructed that it should award nominal damages.

**IV.**    **Available Damages for Intentional Infliction of Emotional Distress**

"[A]n action for intentional infliction of emotional distress, . . . permits not only punitive damages but also damages for mental suffering." Cape Publications, Inc. v. Bridges, 387 So. 2d 436, 440 n.6 (Fla. 5th DCA 1980). "When determining a compensatory award claim, the jury considers if the facts prove outrageous conduct." Halpin v. Kraeer Funeral Homes, Inc., 547 So. 2d 973, 974 (Fla. 4th DCA 1989).

If the jury finds that OCWEN engaged in extreme and outrageous conduct that caused Plaintiff ROLENA DREW to suffer severe emotional distress, it will then determine the appropriate amount of damages to award the Plaintiffs on this claim. The jury will need to determine what amount is fair and reasonable to compensate the Plaintiffs for Defendant's conduct, including compensation for any pain and suffering, emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future, as well as the reasonable value or expense of medical care and treatment necessarily or reasonably obtained by Plaintiffs in the

past or to be so obtained in the future, and any earnings or working time lost in the past and any loss of ability to earn money in the future.

As noted above, the issue of damages for mental suffering is solely within the discretion of the jury. Florida Standard Jury Instruction 501.2 states "[t]here is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence." Accordingly, Plaintiffs are seeking to recover whatever amount the jury determines to be fair and reasonable in view of the evidence presented at trial.

With respect to the availability of punitive damages for intentional infliction of emotional distress, Florida law provides that "if a claim for compensatory damages is established, a claim for punitive damages is also established." Halpin, supra, 547 So. 2d at 974. "The same evidence of outrageous conduct is utilized in determining awards for compensatory and punitive damages." Id. "When determining a punitive damage claim, the jury considers the degree of the proven outrageous conduct." Id. The issue of punitive damages is more fully set forth below.

## V.    **Plaintiffs Are Entitled To Punitive Damages**

Plaintiffs seek punitive damages against OCWEN for its conduct in attempting to collect the discharged debt from the Plaintiffs. The evidence at trial will demonstrate that Defendant's conduct towards the Plaintiffs was so reckless and wanting in care that it constitutes intentional misconduct and/or gross negligence. The jury will be instructed that Punitive damages are warranted against OCWEN if it finds by clear and convincing evidence that OCWEN was guilty of intentional misconduct or gross negligence, which was a substantial cause of loss, injury or damage to Plaintiffs. If the jury finds that punitive damages are warranted, then in determining the amount of the award, the jury will consider the nature, extent and degree of misconduct and the related circumstances, whether the wrongful conduct was motivated solely by unreasonable

financial gain, and whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by OCWEN. Each of these factors weighs heavily in favor of awarding punitive damages against OCWEN.

Over a decade ago, the Court in Perviz v. Ocwen (In re Perviz), 302 B.R. 357 (Bankr.N.D.Ohio 2003) found that OCWEN's conduct in attempting to collect previously discharged mortgage loan debts was sufficiently reprehensible to warrant punitive damages. In so doing, the court placed significant emphasis on certain conduct by OCWEN that is nearly identical to the conduct experienced by the Plaintiffs, and which is relevant to the imposition of punitive damages in this action.

> [I]n situations involving a violation of the discharge injunction, punitive damages have been properly limited to circumstances where there exists a complete and utter disrespect for the bankruptcy laws. In re Arnold, 206 B.R. 560, 568 (Bankr.N.D.Ala.1997) (punitive damages warranted where creditor acted willfully and maliciously in clear disregard and disrespect of the bankruptcy laws); cf In re Borowski, 216 B.R. 922, 925 (Bankr.E.D.Mich.1998) (where parties appeared to have been acting more *373 out of ignorance than clear disregard and disrespect of bankruptcy laws, requisite malevolent intent to award punitive damages was lacking.) In line therewith, this Court has always exercised great restraint in awarding punitive damages. Even so, if ever there was a case calling for the imposition of punitive damages, this is it.
>
> Earlier, and in some detail, the Court has already discussed the harassing nature of the literally hundreds of phone calls and numerous letters Ocwen sent to the Debtors regarding its debt. Moreover, the Court already discounted Ocwen's two overall justifications for such actions: (1) its contacts with the Debtors were meant solely for informational purposes; and (2) notices of the Debtors' bankruptcy petition and subsequent correspondences were sent to the improper corporate address. Thus, in light of the broad scope of its collection activities, Ocwen's conduct cannot be seen as anything but a total disrespect for the bankruptcy system, thereby warranting the imposition of punitive damages.
> . . .
>
> However, once the Debtors received their discharge, Ocwen's collection efforts began to increase in intensity. For example, after the entry of the discharge and the Debtors' vacation of their home, Ocwen took almost no time in locating the Debtors at their new place of residence.
> . . .

> Particularly troubling, is that even after Mr. Purcel brought the instant action to have Ocwen stop its collection efforts, Ocwen continued to make both phone calls and send correspondences to the Debtors.
>
> . . .
>
> Ocwen's actions are demonstrative of a creditor who consciously decided that it, unlike other creditors, was not subject to the discharge injunction.

In re Perviz, 302 B.R. 357, 372-73 (Bankr. N.D. Ohio 2003)

In making its award of punitive damages, the court issued a stern warning to OCWEN:

> In making this award, however, the Court also gives this warning: If Ocwen should appear on a matter that, like in this case, involves a complete and utter disrespect for the automatic stay and/or the discharge injunction, this Court will not hesitate to impose punitive damages in ever increasing amounts until Ocwen feels it necessary to comply with the bankruptcy laws as promulgated by the Congress of the United States.

Id. at 374.

OCWEN has clearly failed to heed that warning. It is well settled that the purpose of punitive damages is "to punish what has occurred and to deter its repetition." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 587 (1996). The imposition of punitive damages against OCWEN in this action for its egregious conduct towards the Plaintiffs is appropriate and justified for both of these reasons.

### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will serve a copy upon all CM/ECF participants.

_s/David P. Mitchell_____

David P. Mitchell, Esquire
Florida Bar No.: 067249
MANEY & GORDON, P.A.
5402 Hoover Boulevard
Tampa, FL 33634

Tel.: (813) 888-6700
d.mitchell@maneygordon.com
david@mitchellconsumerlaw.com
v.marrero@maneygordon.com
Counsel for Plaintiff